**Edward GLEASON et al., Plaintiffs-Appellants,**

v.

**UNITED STATES of America et al., Defendants-Appellees.**

**Nos. 71–1171 to 71–1177.**

United States Court of Appeals, Third Circuit.

Argued Jan. 4, 1972.

Decided April 20, 1972.

---

Meyer Pesin, Schwartz, Horowitz & Krivitzky, Jersey City, N. J., for plaintiffs-appellants.

Jerome B. Litvak, Braff, Litvak, Ertag & Wortmann, East Orange, N. J., for defendant-appellee, Nuclear Materials and Equipment Corp., etc., and others.

Bernard S. Davis, Asst. U. S. Atty., Newark, N. J., for defendant-appellee, United States.

Before HASTIE and ROSENN, Circuit Judges, and McCUNE, District Judge.

## OPINION OF THE COURT

McCUNE, District Judge.

This is a personal injury action against the United States and various private defendants. Jurisdiction of the claim against the United States is based on The Federal Torts Claims Act, 28 U.S.C.A., § 1346(b). Jurisdiction of the private defendants is based on diversity, 28 U.S.C.A., § 1332. In the court below all defendants moved for summary judgment alleging that the applicable statutes of limitation, 28 U.S.C.A., § 2401(b) [1] as to the United States, and N.J.S.A. 2A:14–2 [2] as to the private defendants had run. Defendants' motions were granted and judgment entered against plaintiffs. It is from this judgment that plaintiffs appeal.

This suit was filed August 14, 1968. The incident purportedly causing injury to the plaintiff Edward Gleason and perhaps the other plaintiffs occurred on January 8, 1963. At that time all plaintiffs were employed by Eazor Express, Inc., at its Jersey City, New Jersey terminal. Plaintiff Gleason on that day lifted from a truck, which it was his duty to unload, a box which was leaking. It was later determined that the liquid which was leaking was radio-active

---

1. The government argues that the statute applies as it read before the amendment of 1966:

   "(b) A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues. . . ." 28 U.S.C.A., § 2401(b).

   On July 18, 1966, 28 U.S.C.A., § 2401(b) was amended to read:

   "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C.A., § 2401(b) (1971 supp.).

2. "Every action at law for an injury to the person caused by wrongful act, neglect or default of any person within this state shall be commenced within 2 years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14–2.

material, a contaminated plutonium, shipped by the Atomic Energy Commission to Brookhaven by Eazor Express. The other plaintiffs had not handled the box but had been nearby.

When the exposure of Gleason, and the other plaintiffs, came to light, the Atomic Energy Commission arranged for all of them to be examined at New York University Hospital. The examinations conducted January 23, 1963 revealed no discernable injury to any of the plaintiffs but they were told that injury might appear in from five to eight years. The plaintiffs then sought legal advice although they were not suffering from any injury.

On December 17, 1964, the plaintiffs filed petitions for Workmen's Compensation with the New Jersey Department of Labor and Industry. Eazor Express, Inc., the employer, was the respondent in each case. Each sworn petition alleged that on January 8, 1963, the petitioner had been exposed to chemicals and radiation and as a consequence had suffered injury. No action has ever been taken on these petitions. At the time they were filed, we are told, none of the plaintiffs could point to a discernable injury.

Gleason developed a fibroma in his left hand in December of 1966 which was intermittently treated until February 16, 1968, when his now malignant left hand, shoulder and arm were amputated. The other plaintiffs have not, to this time, shown any ill effects from the radiation. Gleason contends in a deposition that he had no notice of malignancy or its causal connection to the exposure until February 16, 1968, when the amputation was advised.

Gleason and the other plaintiffs filed complaints in the Superior Court of New Jersey on August 14, 1968. The United States removed the case to the United States District Court which, we repeat, entered summary judgment for all defendants holding that the applicable statutes of limitation had run. The procedure followed by the plaintiffs confronts us with a jurisdictional problem which has not been briefed or argued but which nevertheless requires dismissal of the complaints as to the United States for the reasons which follow:

Tort actions against the United States must be brought under the Federal Tort Claims Act, 28 U.S.C.A., § 1346(b) and §§ 2671, *et seq.* There must be compliance with the act before a court can take jurisdiction. Although Congress has waived the government's immunity from suit, that waiver exists only if the aggrieved person complies with the terms of the sovereign's consent. Section 1346(b) in part, provides:

"(b) Subject to the provisions of chapter 171 of this title [28 U.S.C.A. §§ 2671–2680], the district courts, . . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . . for . . . . personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A., § 1346(b).

Since the consent to suit does not extend to suits brought against the United States in courts of the several states, the New Jersey court was from the inception of this suit without jurisdiction. The action of the United States in removing the case to the federal district court did not cure the defect. The effect of removal on jurisdictional defects was considered in Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co., 258 U.S. 377, 42 S.Ct. 349, 66 L.Ed. 671 (1922):

"As the state court was without jurisdiction over either the subject-matter or the United States, the District Court could not acquire jurisdiction over them by the removal. The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks

jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction." 258 U.S. 377 at 379, 42 S.Ct. at 351.

■ This rule was reaffirmed in Minnesota v. United States, 305 U.S. 382 at 389, 59 S.Ct. 292, 83 L.Ed. 235 (1939) where the court explicitly held that removal at the behest of the United States Attorney did not cure a jurisdictional deficiency. For recent adherence to the rule in this Circuit see, Stapleton v. $2,438,110, 454 F.2d 1210, (3d Cir. 1972) and A. J. Curtis & Co. v. D. W. Falls, Inc., 305 F.2d 811 (3d Cir. 1962). We conclude that the instant case falls within the rule of the *Lambert* and *Minnesota* cases and the New Jersey court had no jurisdiction over the United States. The federal district court acquired none by virtue of removal. The complaint of all plaintiffs against the United States is therefore ordered dismissed for lack of jurisdiction.

With respect to the complaint against the private defendants, although the complaint contained no allegations of jurisdiction, the record is sufficient that we can conclude that there is diversity jurisdiction and we will consider the rulings which were made in their favor.

■ Under the rule of Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) federal courts are to apply state statutes of limitations in diversity cases. We conclude that the New Jersey statute, N.J.S.A. 2A:14–2, applies to the claims against the private defendants. The crucial question in the application of that statute is to determine when the action accrues, see note 2 *supra*. The defendants have correctly quoted the New Jersey rule in their brief:

"A cause of action in negligence does not arise unless there has been, first, a negligent act or default and, second, an actual injury, however slight, proximately resulting therefrom." Biglioli v. Durotest, 44 N.J.Super. 93 at 101, 129 A.2d 727, 732 (App.Div. 1957).

■ The cause of action accrues when the plaintiff first knows or has reason to know that he has a cause of action, i. e., when the injury is discovered. See Rosenau v. City of New Brunswick, 51 N.J. 130 at 137–138, 238 A.2d 169 at 172 (1968) and Fernandi v. Strully, 35 N.J. 434, 173 A.2d 277 (1961). Plaintiff's knowledge of defendant's conduct is legally insignificant to commence the running of the statute if the plaintiff has suffered no injury. The statute begins to run not when plaintiff learns of defendant's negligence but when plaintiff learns or should have learned of consequential injury. We conclude that a negligence action accrues for purposes of N.J.S.A. 2A:14–2 at the time when the claimant knows or in the exercise of reasonable diligence should have known of a breach of a duty owed him by the defendant and he knows or in the exercise of reasonable diligence should have known that he has suffered injury as a result of that breach.

With this in mind we will examine whether summary judgment was proper under Rule 56(c).

Defendants filed no affidavits in support of their motion for summary judgment. They relied entirely on the above mentioned Workmen's Compensation Petitions which plaintiffs had filed in 1964.[3] Defendants argue that these petitions were admissions by plaintiffs of an awareness of injury on December 17, 1964.

In his deposition plaintiff Gleason testified that at the time he executed the Workmen's Compensation Petition in 1964 he in fact suffered no known disability (p. 35). He stated that sometime in early 1965 he first noticed a lump in his left hand. As it caused him no trouble he ignored it. It was not until December of 1966 that he first had the

---

3. The use of administrative records in summary judgment proceedings is permissable.

6 Moore, Federal Practice, ¶ 56.11 [1.–8] at 2148.

lump removed. When it returned in May of 1967, Gleason returned to the same doctor. The lump was again removed and the doctor stated that the growth was not malignant. On recurrence of the growth in October of 1967, the doctor sent Gleason to a specialist. The specialist conducted two examinations and told Gleason that no treatment was required. In December of 1967, a change in the lump occurred which caused Gleason to return to the specialist. A biopsy performed in January of 1968 revealed the presence of malignant tissue. During consultation in February of 1968, it was first brought to Gleason's attention that his condition might be causally related to the incident of January 1963.

No depositions or affidavits have come from any of the other plaintiffs. Counsel for plaintiffs has in the course of argument before the district court and this court merely stated that at the time the petitions in question were filed none of the plaintiffs suffered any known injury. A statement of counsel does not create an issue of fact under Rule 56(e).

However the parties have proceeded on the assumption that disposition of the appeal of Gleason governs all plaintiffs. Apparently the court below proceeded on this assumption as well. In the brief of defendants on page 3 in footnote No. 1 it is clearly stated that as to the issues before this court concerning the applicable statutes of limitation, a ruling as to Gleason will be dispositive of the case as to all appellants. Therefore we will treat the plaintiffs in the same manner for purposes of this opinion.

Defendants argue that the integrity of the judicial process will be undermined if we allow Gleason's deposition to contradict his Workmen's Compensation Petition. They argue that judicial estoppel should be applied to plaintiffs, that judicial estoppel should arise when necessary to prevent a party from playing fat and loose with the courts, Scarano v. Central R. Co. of N. J., 203 F.2d 510 at 513 (3d Cir. 1953). The estoppel for which defendants argue is not really estoppel but the application of what is said to be a general rule that a party to litigation will not be permitted to assume inconsistent or mutually contradictory positions with respect to the same matter in the same or a successive series of suits. *Scarano* held that a plaintiff who has obtained relief from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention. In Stretch v. Watson, 6 N.J. Super. 456, 69 A.2d 596 (1949) the rule requiring consistency in judicial proceedings was called a form of equitable estoppel. The application of the rule has been varied (see footnotes in *Scarano*). It has not always been applied but it has usually been applied where the same parties are involved and where one of the parties has changed his position or given something of value relying on the statement of his opponent. It has been applied to secure substantial equity.

The defendants gave nothing to Gleason or the other plaintiffs as the result of their petitions in Workmen's Compensation. They did not change their position. They were not the employer respondent against whom the petitions were filed. They have not even been deprived of the opportunity to investigate the accident. It is difficult to determine how the defendants have been harmed by the statements that plaintiffs made in 1964. If they had made no statements at all their suits would have been timely and they did not mislead anyone by their statements in 1964 because it was well known that they had been exposed and it was unknown to anyone when, if ever, the radiation would result in harm. An examination of the petition reveals that the blanks where the extent of disability could have been indicated and the blanks where medical aid should have been indicated

were not completed and no doctors or hospitals were identified. This would tend to support Gleason's deposition that he had no actual knowledge of any injury when he filed the petition. The point is however, that no one relied on the statements in the petitions or changed position in any way as a result of the statements and we know that the accident had been thoroughly investigated just after it happened.

█ Under these conditions we find no reason to invoke the rule. Gleason and the other plaintiffs did not play fast and loose with the courts or with the defendants. Rather, they merely tried to protect themselves against an incipient danger which had not yet surfaced.

The judgment of the district court in favor of the private defendants is vacated and the complaints against the private defendants are remanded to the district court for further proceedings consistent herewith.