**Elizabeth PETERSON, Individually and as Administratrix Prosequendum of the Estate of Frank Peterson, deceased, Appellant,**

v.

**UNITED STATES of America.**

**No. 82–5186.**

United States Court of Appeals, Third Circuit.

Argued Oct. 22, 1982.

Decided Dec. 9, 1982.

Frederick F. Fitchett, III (argued), Fratto, Little, Alessi & Abbott, Barrington, N.J., for appellant.

W. Hunt Dumont, U.S. Atty., Jerome B. Simandle, Asst. U.S. Atty. (argued), Trenton, N.J., for appellee.

Before WEIS, BECKER and VAN DUSEN, Circuit Judges.

**OPINION OF THE COURT**

VAN DUSEN, Senior Circuit Judge.

This is an appeal from district court orders dismissing a medical malpractice action brought under the Federal Tort Claims Act,

---

28 U.S.C. § 2674, on the ground that the injured party had failed to file the necessary claim with the appropriate federal agency within two years of the time that the cause of action accrued. *See* 28 U.S.C. § 2401(b)(3). We reverse and remand for further proceedings consistent with this opinion.

## I.

On March 8, 1976, Dr. William L. Rohr, a Navy doctor, "obtained a history of present illness from Frank Peterson [a retired Lieutenant Commander] upon his admission to Naval Regional [Medical] Center," Philadelphia, from which history "it was apparent that Mr. Peterson knew about [a] left upper lobe lung lesion in 1973." [1] Dr. Rohr also certified in that affidavit that he had explained to Mr. Peterson "[f]rom March 8 to March 15, 1976, the existence of the probably malignant neoplasm and the necessity for surgery . . ." (13a).[2]

On March 28, 1976, Peterson entered the Naval Regional Medical Center and underwent surgery two days later. During this thoracotomy and lobectomy, the surgeon removed tissue which the Pathology Department, in a report dated April 7, 1976, determined to be carcinomatous.

On March 28, 1978, Peterson filed an administrative claim with the United States Navy, which denied it on May 12, 1980. His widow[3] then filed suit in the United States District Court for the District of New Jersey and contended that the Navy doctors breached their duty of care to her husband by failing to diagnose the malignancy and subsequent metastasis. Thereafter the Government filed a motion to dismiss under Fed.R.Civ.P. 12(b)(1) and argued that Peterson's cause of action accrued when Dr. Rohr advised him on or before March 15, 1976, that he probably had a malignant neoplasm and that therefore his administra-

tive claim filed March 28, 1976, more than two years thereafter, was untimely. Specifically, Dr. Rohr stated in an affidavit that

"5. From March 8 to March 15, 1976, the existence of the probably malignant neoplasm and the necessity for surgery was [sic] explained to Mr. Peterson.

"6. A copy of the discharge note prepared by me on March 15, 1976 was given to Mr. Peterson on that date.

"7. This discharge note included a statement that the patient [Mr. Peterson] was lost to follow-up care from September, 1973 until March, 1976.

"8. This discharge note was given to Mr. Peterson at his request for the purpose of seeking outside medical advice.

"9. All of the information contained in the discharge note was explained to Mr. Peterson. By the time of his discharge on March 15, 1976, Mr. Peterson expressed his belief that the Navy physicians had 'messed up' in his treatment."

The district court, considering material outside the pleadings, treated the motion as one for summary judgment and dismissed the complaint.[4] The district court held that Peterson's widow failed to contradict Dr. Rohr's affidavit, which stated that Rohr had advised Peterson on or before March 15, 1976, that he probably had cancer. Peterson's widow appeals from the orders dismissing her complaint.

## II.

■ In the Federal Tort Claims Act, Congress waived the sovereign immunity of the United States. However, the injured person must comply with the applicable terms and the conditions prescribed by Congress, *Honda v. Clark*, 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967), including strict observance of the limitations period, *Soriano*

---

1. Certification under oath of Dr. William L. Rohr dated September 29, 1981, at 13a–14a.

2. A more complete quotation from the affidavit is included below in the text of this opinion.

3. Peterson died on November 13, 1978.

4. The district court entered two orders. The first, dated November 24, 1981, dismissed the Federal Tort Claims Act claim. The second, dated February 2, 1982, dismissed certain pendent state claims. *See* n. 11 below.

*v. United States,* 352 U.S. 270, 77 S.Ct. 269, 1 L.Ed.2d 306 (1957), which cannot be extended by equitable considerations. *Gleason v. United States,* 458 F.2d 171 (3d Cir. 1972). Congress has required an injured party to present his claim to the appropriate agency within two years after the claim accrues. 28 U.S.C. § 2401(b).[5] A claim "accrues" when the injured party knows both the existence and cause of his injury. *United States v. Kubrick,* 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).

In the case at bar, the district court needed to determine whether any genuine issue of fact existed concerning the date when Peterson's cause of action accrued. *See* Fed.R.Civ.P. 12(c) and 56(c). In resolving this question, the district court relied exclusively upon Dr. Rohr's affidavit, in which Rohr repeatedly referred to the discharge note he supposedly had given to Peterson. According to Rohr's affidavit, the discharge note contained a statement that he told Peterson of the probable malignancy.

Fed.R.Civ.P. 56(e) requires a party who files an affidavit to "attach thereto and serve therewith" sworn or certified copies of all papers referred to in the affidavit.[6] Despite this clear mandate, the Government never produced, nor did the district court require the Government to produce, this discharge note. At oral argument counsel for the Government admitted possession thereof and justified the failure to produce it upon the ground that Peterson had made no such request.[7] This argument squarely contradicts the unambiguous language of the rule, which does not condition production of papers referred to in the affidavit upon a request by the opposing party to do so. At oral argument, counsel for the Government also contended that non-compliance with the rule cannot be considered tantamount to failing to meet the burden imposed by Fed.R.Civ.P. 56. This argument also squarely contradicts the unambiguous language of the rule, which provides that a motion for summary judgment must be "supported as provided in this rule."[8]

**5.** Specifically, the respective statutes provide as follows:

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages. . . . [§ 2674]

"A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." [§ 2401(b)]

A claim is "presented" when the federal agency receives it. 28 C.F.R. § 14.2. Failure to observe the requirements of the Act mandates dismissal. *See Bialowas v. United States,* 443 F.2d 1047 (3d Cir.1971).

**6.** This rule provides that "[s]worn or certified copies of *all* papers or parts thereof referred to in an affidavit *shall* be attached thereto or served therewith." (Emphasis added.)

**7.** In fact, at oral argument, Government counsel conceded that

"[i]n all fairness it would have been better form, and I don't want to be presumptuous, but we probably wouldn't be here today if the four-page medical summary—discharge summary—had been attached to Dr. Rohr's affidavit because one could then have lined up exactly what the doctor was referring to . . . ."

Producing this document would have been not only "better form" but also required compliance with Rule 56. Peterson's widow contends that she made such a request to the Government. Even if she did not and even if Rule 56 did not require as much, rudimentary principles of fairness and good faith should have prompted the Government to provide this information to her as well as to the district court.

**8.** Fed.R.Civ.P. 56(e) contains this wording:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The Government, as the moving party, had the burden of showing no genuinely disputed factual issues for trial. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

*See also Gordon v. Watson,* 622 F.2d 120 (5th Cir.1980), *Maiorana v. MacDonald,* 596 F.2d

Additionally, Fed.R.Civ.P. 56(e) requires the party resisting a motion for summary judgment to set forth specific facts showing that a genuine issue for trial exists "by affidavits or as otherwise provided in this rule." A party may not rely upon the allegations in his pleadings. *See generally Fireman's Insurance Co. of Newark, New Jersey v. DuFresne,* 676 F.2d 965 (3d Cir. 1982). In the case at bar, Peterson's widow explained her failure to file any affidavits upon the ground that she did not know whether Dr. Rohr had told her husband that the lesion was probably malignant. Mrs. Peterson could have, and indeed should have, filed an affidavit so stating in order to raise the question. Thereafter, the district court, under Fed.R.Civ.P. 56(f), could have ordered the deposition of Dr. Rohr or other discovery which could have elicited and clarified pertinent information. If a question of fact exists concerning the existence of the defense, the issue cannot be determined on affidavits. *Hanna v. United States Veterans' Administration Hospital,* 514 F.2d 1092 (3d Cir.1975).[9] Under the circumstances, the judgment must be set aside for failure to comply with Rule 56(e).

While the foregoing discussion provides ample basis for setting aside the district court's order, the appropriateness of so doing is underscored by the ambivalence of the medical record insofar as an inference might be drawn therefrom as to whether Peterson knew of the probable malignancy and the metastasis of the cancer. Doctors' progress notes, dated March 28, 1976, specifically reported "no evidence of mediastinal adenopathy." Another Navy doctor also noted expressly that he "explained in detail to the patient" the planned thoracotomy and resection and the possible complications, including the risk of myocardial infarction and mortality. The doctor specifically noted that Peterson "agree[d]" with the proposed plan. Similarly, a consultation dated April 13, 1976, from the Oncology Department expressly mentioned that the options of x-ray and chemotherapy as well as pertinent recommendations had been discussed with Peterson. Why Dr. Rohr did not also note in writing on the patient's chart the discussion referred to in his affidavit does not appear in the district court record.

Moreover, the request for performance of the thoracotomy and lobectomy, which Peterson signed March 29, 1976, stated that the purpose of the surgical procedure was to "operate to expose left upper lung[,] determine nature of lesion indicated on x-rays and extent of abnormality if possible[, and to] excise diseased or affected tissue as indicated by prudent medical practice."

1072 (1st Cir.1979), and *Washington Post Co. v. Keogh,* 125 U.S.App.D.C. 32, 365 F.2d 965 (1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967) (affidavits which do not have attached thereto copies of papers referred to therein do not comply with the rule and cannot be relied upon in ruling on a motion for summary judgment).

9. In *Hanna,* the plaintiff alleged that Government doctors committed malpractice during an operation which occurred August 26, 1969. A post-operative infection originally developed within three months but recurred on June 10, 1971. Plaintiff filed his complaint under the Federal Tort Claims Act on January 25, 1974.

The Government moved to dismiss on the ground that the statute of limitations had run. The parties did not file affidavits, although plaintiff's attorney attached excerpts of medical testimony presented at an unrelated workmen's compensation proceeding.

This court, reversing the district court's order dismissing the action, held that

"Our review of the excerpts of testimony which the district court considered and of the district court's memorandum, has convinced us that the district court did determine the statute of limitations defense by resolving a disputed fact issue. The court seized upon the allegation in the complaint that in 1971 plaintiff had a post-operative infection at the site of the operation, and coupled this with an answer by Dr. Cassidy to the effect that spontaneous infections in the back are rare. From these two items of evidence the court concluded that the plaintiff knew or must have known of the cause of his condition. But this finding attributes to the plaintiff the expert knowledge of a physician, ignores the testimony about plaintiff's psychiatric condition, and ignores the testimony by Dr. Cassidy suggesting that the cause of the back condition, osteomyelitis, a bone infection caused by the surgery, was first diagnosed in June of 1972."

*Id.* at 1095.

Another such consent which Peterson signed the previous day had been couched in similar terms but did say that, if the lesion were malignant, the surgeon would look for evidence of "spread." Admittedly, these references in the medical records do not affirmatively establish whether Peterson knew of the probable malignancy of the lesion and metastasis of the cancer. However, doubts should have been resolved against the moving party, *Janek v. Celebrezze,* 336 F.2d 828 (3d Cir.1964), and the evidence and inferences drawn therefrom should have been considered in the light most favorable to Peterson, the party resisting the motion. *Drexel v. Union Prescription Centers,* 582 F.2d 781 (3d Cir.1978).

In sum, in the case at bar, the Government failed to produce the discharge note and there is an absence in the medical records provided to the district court of a contemporary notation of Dr. Rohr's conversation with Peterson, whereas those medical records contain similar notes written by other doctors who discussed Peterson's condition with him.[10] Accordingly, an inference could be drawn in Peterson's favor that he might not have known of a probable malignancy prior to March 28, 1976. At all events, because of the Government's failure to comply with Rule 56(e), the district court erred in dismissing the complaint.

On remand, the Government shall produce Dr. Rohr's discharge note for consideration by the district court, which, upon request by Peterson's widow, may order a deposition of Dr. Rohr or other appropriate discovery.[11]

### III.

The orders of the district court dismissing the complaint will be reversed and the case remanded to the district court for further proceedings consistent with this opinion.

---

10. See Exhibits A, B–1, B–2, B–3, B–4, C–1, C–2, D–1, D–2, E, F–1, F–2, G–1 and G–2 attached to plaintiff's district court Brief in Opposition To Defendant's Motion To Dismiss.

11. If the district court ultimately determines that Peterson filed a timely claim with the Navy, it will need to re-examine the viability of his widow's wrongful death, survivorship and consortium claims as well as the applicability thereto of *Howard v. Bell Telephone Co.,* 306

Pa. 518, 160 A. 613 (1932). *See Grbac v. Reading Fair Co.,* 688 F.2d 215, 217 (3d Cir.1982).

The Government had filed a motion *in limine* for a determination that Pennsylvania law would govern the dispute. The district court filed a consent order to that effect on June 15, 1981. Although Mrs. Peterson appealed from the order which denied her motion to be relieved from the consent order, she has not pressed this issue on appeal.