ESSINGTON METAL WORKS, INC., et al.

v.

RETIREMENT PLANS OF AMERICA, INC., et al.

ESSINGTON METAL WORKS, INC., et al.

v.

Sidney A. FRIEDMAN.

Civ. A. Nos. 81–5094, 82–4820.

United States District Court, E.D. Pennsylavania.

June 4, 1985.

Sheva Stoloff, Beitch and Block, Philadelphia, Pa., for plaintiffs.

Stephen J. Springer, LaBrum and Doak, Philadelphia, Pa., for defendants.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In December 1981, Retirement Plans of America, Ernest D. Palmarella, Jo-Ann Laverghetta, and Leon L. Levy ("RPA parties") removed to this court a suit which had been filed against them in the Court of Common Pleas for Philadelphia County. That suit had been brought by Essington Metal Works, Inc.; Essington Metal Works, Inc. Pension Plan and Trust; and Essington Metal Works, Inc. Profit Sharing Plan and Trust ("Essington parties"). The complaint set forth a variety of tort causes of action based upon alleged breaches of duty by the RPA parties in preparing and implementing an employee benefits plan for use by the Essington parties. The complaint also set forth a cause of action for breach of contract based upon the same allegations. The suit was recorded on the docket of this court as Civil Action Number 81–5094. The removal petition stated that removal was proper because the complaint included a claim for breach of fiduciary duty which could only be brought under the Employee Retirement Income Security Act, ("ERISA"), 29 U.S.C. §§ 1001 to 1461, a federal statute. See 28 U.S.C. § 1441(a) and (b) (removal of a federal question suit is authorized without regard to the citizenship of the parties).

On March 24, 1982, Louis Stafford brought suit in this court against one of the Essington parties, Essington Metal Works, Inc. and Fred Hoffken Sr. The suit alleged a claim under ERISA for recovery of employee benefits allegedly due to Mr. Stafford. 29 U.S.C. § 1132(a)(1)(B). The Essington parties thereafter filed a third-party complaint against the RPA parties in the suit filed by Mr. Stafford. The allegations in the third-party complaint paralleled the claims asserted in Number 81–5094 but the third-party complaint sought recovery solely for the damages for which the Essington parties might be liable under the Stafford claim. This suit was assigned Civil Action Number 82–1339.

In June of 1982, Civil Actions 81–5094 and 82–1339 were consolidated pursuant to the unopposed motion of the RPA parties.

In November 1982, Sidney A. Friedman removed to this court a suit filed against him in the Court of Common Pleas by the Essington parties. Mr. Friedman is a member of the Board of Directors and shareholder of Retirement Plans of America and was sued on the grounds charged against the RPA parties in the other two actions. Removal of the suit against Mr. Friedman was predicated on diversity of citizenship; Mr. Friedman is a citizen of New Jersey and the Essington parties are citizens of Pennsylvania. This case was assigned Civil Action Number 82–4820 and was consolidated with the other two cases in June 1983.

Following a period of discovery, the Stafford suit (82–1339) went to trial with the court sitting as the finder of fact. At the

close of the trial, the court, in a bench opinion, concluded that judgment should be entered for the Essington parties and against Mr. Stafford, a result that rendered moot the Essington parties' third-party claim against the RPA parties. At the same time, the court denied the motions of the Essington parties to remand their suits against the RPA parties (81–5094) and Mr. Friedman (82–4820). The latter suit appeared to be a proper diversity case, and the former seemed cognizable as a federal question claim under ERISA to which were annexed a number of pendent state claims.

An appeal was filed in *Stafford* and the two other cases were placed in civil suspense pending resolution of the appeal. In May 1984, the Court of Appeals for the Third Circuit affirmed the *Stafford* judgment. No petition for certiorari was filed.

On October 30, 1984, the Essington parties moved for leave to amend the complaint in the *RPA* suit. The motion stated that plaintiffs intended, by means of this amendment, to clarify the nature of the claims asserted. The movants contended that, if the motion to amend was granted, it would be clear from the amended complaint that the Essington parties were alleging only state law claims and did not intend to present a claim for breach of fiduciary duty under ERISA. The RPA parties responded to this motion on November 20, 1984. They argued that an amendment should not be allowed if the only purpose of such an amendment was to oust the federal court of jurisdiction. *See generally West-moreland Hospital Association v. Blue Cross,* 605 F.2d 119 (3d Cir.1979); 1A *Moore's Federal Practice* ¶ .160[7] (1985); 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3738 at 558–59 (1985). In addition, the RPA parties contended that the amended complaint could also be construed to contain a claim for breach of fiduciary duty and, thus, federal jurisdiction would be proper even if the amendment was allowed.

Upon review of these submissions, this court entered an Order scheduling oral argument on the motion to amend. In that Order, the court directed the parties to submit further memoranda on the following questions:

> Bearing in mind the frequently stated principles regarding limitations on federal court jurisdiction of a removed case when the state court from which the case was removed could not have had jurisdiction of the suit, *Gleason v. United States,* 458 F.2d 171 (3d Cir.1972); *Stapleton v. $2,438,110,* 454 F.2d 1210 (3d Cir.1972); *Leddy v. United States Postal Service,* 525 F.Supp. 1053 (E.D.Pa.1981), see 14 C.A. Wright & A.R. Miller, *Federal Practice and Procedure,* § 3721 at p. 523 and § 3722 at p. 574; 1A *Moore's Federal Practice* ¶ 0.157[3], do those principles have relevance to the present action? If so, how should those principles be applied to this litigation? If not, why are they not relevant?

*Essington Metal Works, Inc., et al. v. Retirement Plans of America, et al.,* No. 81–5094 at 2 (March 22, 1985). The parties have since filed those submissions and oral argument was held on May 3, 1985. For the reasons set forth below, this court concludes that the *RPA* action must be remanded to the Court of Common Pleas for Philadelphia County.

█ The basis for removal of the *RPA* suit was the inclusion among the claims against RPA of a claim which arguably fell under section 1109 of Title 29 of the United States Code. That provision of ERISA creates liability for breach of fiduciary duty. A civil action may be brought to recover for such a breach under section 1132(a)(2). Jurisdiction to hear such claims is exclusively vested in the federal courts. 29 U.S.C. § 1132(e)(1).[1]

In 1922, the Supreme Court, speaking through Justice Brandeis, established the general principle that:

---

1. There is one type of lawsuit arising under ERISA—a suit brought pursuant to 29 U.S.C. § 1132(a)(2)(B), by a participant or beneficiary to enforce rights to present or future benefits

under an ERISA plan—which may be brought either in a federal or in a state court. 29 U.S.C. § 1132(e)(1).

[t]he jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.

*Lambert Run Coal Co. v. Baltimore & Ohio RR. Co.*, 258 U.S. 377, 382, 42 S.Ct. 349, 351, 66 L.Ed. 671 (1922). *See Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1 n. 27, 103 S.Ct. 2841 n. 27, 77 L.Ed.2d 420 (1983); 1A *Moore's Federal Practice* ¶ 0.157[3.–1] to [3.–5] (1985); 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 3721 and 3722 (1985). This doctrine of "derivative jurisdiction" has been consistently applied by the federal courts as a ground for dismissal of an action when the state court lacked jurisdiction to entertain the action at the time of or prior to removal.

■ In federal question cases, the principle of derivative jurisdiction mandates dismissal of an action when the federal cause of action arises under a statute which vests exclusive jurisdiction in the federal courts. Dismissal is required despite the fact that the court would have had jurisdiction to hear the suit had it initially been brought in federal court. *E.g.*, *State of Minnesota v. United States*, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235 (1939); *General Investment Co. v. Lake Shore Ry.*, 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244 (1922); *Gleason v. United States*, 458 F.2d 171 (3d Cir.1972).

■ Because the deficiency is one which goes to the subject-matter jurisdiction of the court, it may be raised at any time— even on appeal. Moreover, it may, as in the present suit, be raised by the court *sua sponte*. 1A *Moore's Federal Practice* ¶ 0.157 [3.–2] at 58 (1985).

■ The *RPA* suit was removed to this court solely on the basis of this court's jurisdiction to hear cases arising out of federal statutes. The federal statute upon which the removal petition relies is ERISA and the portion of ERISA under which the plaintiffs' claim allegedly falls is one over which federal courts possess exclusive jurisdiction. Therefore, the state court had no jurisdiction to hear that claim. Although the state court may have had general jurisdiction to hear and determine the state law claims in this case, those claims were not the basis for removal. Because the only claim which formed the basis for removal was one over which the state court had no jurisdiction, this court could not obtain jurisdiction by removal. Consequently, removal was improper and the matter should be dismissed or returned to the state court. *See generally Cate v. Blue Cross & Blue Shield of Alabama*, 434 F.Supp. 1187, 1189 n. 3 (E.D.Tenn.1977).

■ The RPA parties contend, however, that this court should retain jurisdiction of the *RPA* litigation for a number of reasons. The primary argument presented in support of this position is that the Essington parties have waived any objections they might have had to this court's exercise of jurisdiction. The Essington parties respond that all of the action taken by them up to this time in the *RPA* litigation has been purely defensive in nature and that they have taken no affirmative steps to utilize this court's processes. Therefore, the Essington parties assert that they have taken no actions which would estop them from moving to remand at this time.

Section 1447(c) of Title 28 states:

If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.

This provision has been interpreted to allow the district court some discretion in deciding whether a technically improper removal necessitates remand. If the case is one within the original jurisdiction of the federal court, it is generally established that the federal court may retain jurisdiction if that court concludes that the party seeking remand has waived his objections. 1A

*Moore's Federal Practice* ¶ 0.157[11.–1] to [11.–6] (1985).[2] However, defects in the removal of a suit which affect the subject-matter jurisdiction of the federal court are not waivable, even by express consent of both parties. Thus, although a district court would have had jurisdiction had the ERISA claim which formed the basis for removal of this suit been brought originally in federal court, the lack of jurisdiction of the state court over that claim and resulting lack of derivative jurisdiction of the federal court upon removal is not merely a technical or procedural defect. The absence of derivative jurisdiction goes to the subject-matter jurisdiction of the state court and, consequently, to the subject-matter jurisdiction of the federal court. *See* 1A *Moore's Federal Practice* ¶ 0.157[3.–2] at 58 (1985).

2. If the defect in removal is not raised until the matter is appealed from the district court, the court of appeals will only consider whether the district court could have had original jurisdiction of the suit. *See Medlin v. Boeing Vertol Co.,* 620 F.2d 957 (3d Cir.1980). A party may not wait until it has obtained a final judgment in the district court to raise an objection which does not go to the subject-matter jurisdiction of the court which entered that final judgment.

3. It is evident that there is something anomalous about the rule that, in a removed action which could have been initiated in a federal court, there can be no waiver of a lack of subject matter jurisdiction predicated on the lack of jurisdiction of the state court. But if the rule were otherwise, it would not avail these defendants.

There are no fixed criteria for determining when waiver of objections to removal has occurred. However, the following factors are often relevant to the court's decision: (1) the length of time prior to the filing of a motion to remand, *Green v. Zuck,* 133 F.Supp. 436 (S.D.N.Y.1955); *Fisher v. Exico Co.,* 13 F.R.D. 195, 196 (E.D.N.Y.1952); (2) the degree to which the party seeking remand has made use of the processes of the federal court prior to filing the motion to remand, *Monaco v. Carey Canadian Mines, Ltd.,* 514 F.Supp. 357 (E.D.Pa.1981); (3) the degree to which the party has sought affirmative relief from the federal court prior to seeking remand, *In re Moore,* 209 U.S. 490, 496, 28 S.Ct. 585, 586, 28 S.Ct. 706, 52 L.Ed. 904 (1908); and (4) whether the party seeking remand has done something or enjoyed something which would make it inequitable to remand the case at this time, *Noethe v. Mann,* 27 F.2d 451 (D.Minn. 1928).

"It has been held that where the state court lacks subject-matter jurisdiction and the case is removed, the defect cannot be waived although the federal court would have had original jurisdiction if the suit had been brought there initially." 1A *Moore's Federal Practice* ¶ 0.157[11.4] at 175. *See e.g., Stapleton v. $2,438,110,* 454 F.2d 1210 (3d Cir.1972), *cert. denied,* 409 U.S. 894, 93 S.Ct. 111, 34 L.Ed.2d 151 (1972); *A.J. Curtis & Co. v. D.W. Falls, Inc.,* 305 F.2d 811 (3d Cir.1962) (the parties may not create jurisdiction in the federal court by acquiescence when the state court from which the suit was removed could not have had jurisdiction). Accordingly, because the parties cannot waive objections to the federal court's lack of derivative jurisdiction, this court may not proceed with the RPA suit on the basis of federal question jurisdiction.[3]

In the *RPA* case, the RPA parties contend that the Essington parties have waived their objections to removal because (a) they waited eighteen months prior to filing a motion to remand; (b) they filed a request for production of documents and noticed five depositions; (c) they filed a motion to compel production of documents; (d) they responded to a motion for summary judgment filed by the RPA parties and, as a consequence of that motion, a number of the Essington plaintiffs' state law claims were dismissed; and (e) they moved for certification of this court's decision on the summary judgment motion.

Most of the reasons mentioned by the RPA parties to support their waiver argument are insufficient to warrant the conclusion they seek. For example, once the Essington parties had moved for remand in June 1983 and that motion had been denied, later actions by those parties such as the filing of a motion for certification of the decision on the RPA parties' motion for summary judgment cannot waive the objection to removal since it has already been asserted and rejected. 1A *Moore's Federal Practice* ¶ 0.157[11.–6] at 185 (1985). In addition, the participation of the Essington parties in discovery directed toward the RPA parties was a necessary aspect of the third-party claim which had been filed by the Essington parties against the RPA parties in the *Stafford* suit which was consolidated with the *RPA* suit. Thus, all discovery matters were docketed under the same civil action number for all of the suits. As a result, it is impossible to distinguish at this time between those items of discovery which would have been filed as part of the *Stafford* litigation which was properly before this court and the discovery which would only have been pertinent

The RPA parties have, however, asserted a number of other grounds on which, they contend, this court properly obtained and can retain jurisdiction of the *RPA* suit. Although these allegations were not stated in the removal petition, the RPA parties seek leave to amend that petition to include them if such an amendment will allow this litigation to remain in the federal forum. Before considering the propriety of such amendments, it is first appropriate to determine whether the additional jurisdictional allegations, if allowed, would warrant maintenance of this litigation in the federal courts.

■ First, the RPA parties contend that removal was proper under 28 U.S.C. § 1441(c) which states:

> Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

The RPA parties argue that Count 4 of the *RPA* complaint, which states a claim "in trespass" against Leon Levy, is such a separate and independent claim or cause of action. According to the RPA parties, Leon Levy is a citizen of New Jersey. Therefore, since all of the Essington parties are citizens of Pennsylvania, they contend that this court would have diversity jurisdiction with regard to that claim. Once jurisdiction is established with regard to that claim, the other counts of the complaint which include nondiverse defendants could be removed to the federal court under § 1441(c).[4]

to the *RPA* suit. Furthermore, the Essington parties cannot be deemed to have waived their objections to this court's jurisdiction by responding to the RPA parties' motion for partial summary judgment. The defense of a motion filed by another party which may harm the interests of the party later seeking remand is generally not held against the latter party when the question of waiver is considered. *Feller v. National Enquirer,* 555 F.Supp. 1114 (N.D.Ohio 1982).

On the other side of the balance, the length of time taken by the Essington parties prior to filing a motion to remand was significant and presents some support for the RPA parties' waiver contentions. In addition, the RPA parties suggest that they may be prejudiced by remand of the suit at this time because this court has resolved certain issues of state law in favor of the RPA parties on their motion for partial summary judgment and these matters may be relitigated in the state court on remand. However, the RPA parties have presented no legal support for this position. Therefore, it is not clear that a state court on remand would reopen this court's determinations on issues of state law.

On balance, this court does not appear to have a sufficient basis upon which to conclude that the Essington parties have consented to this court's exercise of jurisdiction over the *RPA* litigation.

4. The RPA parties also contend that this court may retain jurisdiction because the amendment to the complaint proposed by the Essington parties supports federal question jurisdiction. In *Brough v. United Steelworkers of America, AFL–*

*CIO,* 437 F.2d 748, 749 (1st Cir.1971), the Court of Appeals for the Third Circuit held that the amendment of a complaint to add a claim under a federal statute established a basis for federal jurisdiction although such jurisdiction was not proper at the time of removal. The plaintiff's action in amending the complaint to add a federal claim was held to have been an affirmative act by the plaintiff to invoke the jurisdiction of the federal court which obviated any objections that the plaintiff might otherwise have to removal.

The amendment proposed in the present case is quite different from the amendment that was found to have invoked the court's jurisdiction in *Brough.* In this case, the Essington parties seek to amend to establish that their claim for breach of duty does not fall within the framework of an ERISA claim for breach of fiduciary duty. Not only is this amendment being presented as a means to oust the federal court of jurisdiction— unlike the situation in *Brough* in which the amendment affirmatively invoked federal jurisdiction—but the amendment in the present suit seeks only to clarify the meaning of the alleged ERISA claim in the complaint. The amendment in *Brough* added an entirely new claim to the complaint; one based upon federal law. Therefore, the amendment in *Brough* provided a ground for federal jurisdiction that had not been available at the time of removal while, in the present case, the amendment would add no new federal claims. Due to these differences between the present case and the procedural history in *Brough,* it is inappropriate to conclude that the Essington parties, by their proposed amendment, are affirmatively invoking the jurisdiction of this court.

The cornerstone of this argument is the assumption that, when viewed against the totality of the complaint, Count 4 is a "separate and independent claim or cause of action." The phrase "separate and independent claim or cause of action" has been defined in only the broadest terms. Whether a particular claim can be labelled "separate and independent" from other claims requires a case-by-case analysis of the nature of the complaint and the particular claims asserted therein.

The most frequently cited explanation of the phrase "separate and independent claim or cause of action" is found in the Supreme Court decision in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951). In that case, the Court, speaking through Justice Reed, noted that the 1948 amendment of the language of this section had changed the operative phrase from "separable controversy" to "separate and independent claim or cause of action." This modification, the Court concluded, was intended to "abridge the right of removal."

> Of course, 'separate cause of action' restricts removal more than 'separable controversy.' In a suit covering multiple parties or issues based on a single claim, there may be only one cause of action and yet be separable controversies. The addition of the word 'independent' gives emphasis to congressional intention to require more complete disassociation between the federally cognizable proceedings and those cognizable only in state courts before allowing removal.
>
> ....
>
> .... Considering the previous history of 'separable controversy,' the broad meaning of 'cause of action,' and the congressional purpose in the revision resulting in 28 U.S.C. § 1441(c), 28 U.S.C.A. § 1441(c), we conclude that where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).

341 U.S. at 12–13, 71 S.Ct. at 539–540.

This language is perceived by most commentators as a significant limitation on the removal of diversity cases under section 1441(c). Because most states do not allow parties to be joined together in an action unless there is a question of law or fact common to all of them or unless the claims are asserted out of the same transaction or occurrence, it is difficult to imagine a case in which claims against different parties could be joined in a state court prior to removal but which would contain separate and independent claims or causes of action against different parties as described in *Finn*. 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3724 at 367–68 (1985).

In the *RPA* suit, Count 4 alleges that Leon Levy breached the duty of care he owed to the Essington parties; the alleged breach consists of recommending that the Essington parties (1) employ the RPA parties to prepare an employee benefit plan and (2) make use of the improperly prepared plan documents. Leon Levy is also included as a defendant in a number of the other counts of the complaint. In addition, the other counts contain allegations relating to the wrongful conduct of the RPA parties in preparing the benefits plan and in providing advice related to the use of that plan. The complaint seeks to recover damages for all of the injury suffered by the Essington parties due to the use of the improperly prepared employee benefits plan.

Thus, the claim against Leon Levy in Count 4 is merely part of a series of "interlocked transactions" which have all contributed to the alleged harm to the Essington parties. Consequently, *Finn* forecloses a finding that the claims in Count 4 are "separate and independent" from the other claims in the complaint.

■ Second, the RPA parties contend that removal of this suit to federal court was appropriate in that either the claims or the parties should be deemed pendent or ancillary either to the *Stafford* suit or to the *Friedman* suit. This contention labors under the severe handicap that there were

no *Stafford* and *Friedman* cases for this suit to have been pendent or ancillary to at the time the *RPA* suit was removed. But the subsequent filing of those cases is said to have cured the difficulty.

■ *Friedman* was removed to this court on the basis of diversity of citizenship.[5] Since pendent jurisdiction is only available when there is a federal question claim to which the remaining claims or parties are pendent, pendent jurisdiction would not be a proper ground for linking *Friedman* and this suit. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Seyler v. Steuben Motors, Inc.*, 462 F.2d 181 (3d Cir.1972); 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3567.2 at 149–50 (1985).

■ Whether ancillary jurisdiction could be bottomed on *Friedman* turns on application of the three-level analysis formulated by Judge Becker in *Ambromovage v. United Mine Workers of America*, 726 F.2d 972, 989–990 (3d Cir.1984), (footnotes omitted):

On the first level, a court must determine whether it has constitutional power to determine a state-law claim. This "power" test depends on whether there is a "common nucleus of operative fact" between the state claim at issue and the accompanying federal claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). As we see it, *Gibbs* provides the unifying principle which limits the extent of federal jurisdiction over both pendent and ancillary claims. The second level requires the court to determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, such as the requirement of complete diversity or the explicit exclusion of a particular party from federal liability for the actions alleged in the complaint. At this level, the court may consider whether the plaintiff's assertion of ancil-

lary or pendent jurisdiction is an attempt to manufacture federal jurisdiction where it is otherwise foreclosed by the relevant statutes. The issue generally turns on statutory interpretation. The final level—prudential in character—is for the district court, in its discretion, to weigh various factors bearing on the appropriateness of hearing a pendent claim.

726 F.2d at 989–90 (footnotes omitted).

The first step of the *Ambromovage* analysis is satisfied due to the significant duplication of claims between the *RPA* and *Friedman* actions. But the second step of the analysis is not satisfied. That part of the test requires the court to consider whether the exercise of federal jurisdiction would "violate a particular federal policy such as the requirement of complete diversity."

In the present case, the defendants in the *RPA* suit are not of citizenship diverse from the plaintiffs. Therefore, although *Friedman* is properly here on the basis of diversity jurisdiction, if the *Friedman* and *RPA* suits had been combined as one suit, that suit could not have been litigated in a federal forum on the basis of citizenship of the parties. To allow *RPA* to be appended to *Friedman* through the doctrine of ancillary jurisdiction would merely employ an indirect mechanism to gain access to a federal forum which would otherwise be barred. Because this would directly conflict with the substantial federal policy limiting diversity jurisdiction to cases in which each plaintiff is a citizen of a state different from the state of citizenship of each defendant, this court will not exercise ancillary jurisdiction. *See generally Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

An alternative argument is that the claims in the *RPA* suit are pendent to the *Stafford* claims or that the RPA parties are pendent parties to *Stafford*. The de-

---

5. As with the instant suit, this court could not have obtained jurisdiction of an ERISA claim in *Friedman* since such a claim would not have been properly before the state court prior to removal.

termination whether these arguments form a proper basis for the exercise of federal jurisdiction again requires the court to employ the analysis set forth in *Ambromovage.*

The first issue to be considered is whether *RPA* and *Stafford* have a common nucleus of operative fact. Prior to the trial of *Stafford,* a portion of that suit substantially overlapped with a portion of *RPA.* That area of overlap involved the third-party claim in *Stafford* and the claims in *RPA* to the extent that those claims related to wrongdoing by the *RPA* parties which caused the alleged harm to Mr. Stafford. However, most of the *RPA* suit involved claims which had no relationship to the claims of Mr. Stafford. Accordingly, the first requirement of *Ambromovage* is not satisfied.

In addition, there would be good cause under the third level of the *Ambromovage* analysis for this court to decline to exercise its discretion to consider this case. At the present time, the only claims remaining in *RPA* are state law claims. These claims bear no relationship to any federal claim which was before this court in *Stafford,* since all such claims were extinguished by the resolution of *Stafford* in favor of the Essington parties. Therefore, there is no federal interest in retaining this suit in a federal forum and a substantial state interest in allowing a state court to consider and resolve the remaining questions of state law. In such a situation, there is no firm basis upon which this court could conclude that this action should continue in federal court.

In light of the foregoing determinations that this court did not properly gain jurisdiction of this case as a federal question action and that this court may not retain jurisdiction under the doctrines of ancillary, pendent or pendent party jurisdiction, it is now necessary to consider how to dispose of this case.

As a general matter, when a federal court determines that it did not gain jurisdiction of a case on removal because there was no jurisdiction in the state court, the action is dismissed by the federal court. 1A *Moore's Federal Practice* ¶ 0.157[3.–2] (1985). However, in the present case, the state court did properly have jurisdiction of the state law claims which were joined with the alleged federal law claim. Although this court had no basis for obtaining jurisdiction over those state law claims absent jurisdiction of the federal claim, this court is empowered to remand cases which have been removed without jurisdiction. *See, e.g., Bancohio Corp. v. Fox,* 516 F.2d 29 (6th Cir.1975); *Washington v. American League of Professional Baseball Clubs,* 460 F.2d 654 (9th Cir.1972); *Thorp v. Serraglio,* 464 F.Supp. 149 (N.D.Ohio 1978). Therefore, I conclude that the alleged federal law basis for removal should be dismissed from this suit because this court did not obtain jurisdiction on removal and the state court would have no jurisdiction to consider the claim on remand. However, I will remand the remainder of the surviving state law claims in this action to the state courts for resolution.[6]

---

6. Since I have concluded that this court should remand the case because removal was without jurisdiction, it is inappropriate to address the motion to amend filed by the Essington parties.