**Paul A.R. STEWART and Susan B. Stewart, h/w**

**v.**

**The UNITED STATES of America.**

Civ. A. No. 88–5821.

United States District Court,
E.D. Pennsylvania.

June 7, 1989.

Kenneth Michael Rothweiler, Philadelphia, Pa., for plaintiffs.

Susan Dein Bricklin, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM

KATZ, District Judge.

This is a medical malpractice action against the United States brought under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* The government has moved for summary judgment on the ground that plaintiff Paul Stewart's[1] claims are barred by the statute of limitations governing FTCA actions, 28 U.S.C.

---

1. Plaintiff's wife, who initially filed a claim for loss of consortium and services, has withdrawn her claim. Brief of Defendant, page 5.

§ 2401(b), and the plaintiff has responded to the motion. For the reasons that follow, the government's motion will be granted in part and denied in part.

BACKGROUND

Paul Stewart was born in 1964 with bilateral undescended testicles.[2] In 1968, plaintiff, then four years old, had surgery to correct this condition.[3] The surgery was done at the recommendation of military physicians, and was performed by a military surgeon, a Dr. Cleveland, at Myrtle Air Force Base, South Carolina. Prior to the operation, one of the military physicians informed plaintiff's father that his son would suffer an increased risk of cancer if the testicles remained undescended, and plaintiff's father authorized the operation on the basis of this medical opinion.

The operation was unsuccessful, both testicles remaining in an undescended position. Dr. Cleveland advised plaintiff's father that no further action was necessary, but that if his son's testicles did not naturally descend by the time Paul reached puberty, another operation would probably be required. On the advice of Dr. Cleveland, plaintiff's father did not have his son examined by any physician regarding this condition until January, 1976, when the signs of puberty first became visible.

In January, 1976, plaintiff's father, then retired from the military, took his son to see a urologist in private practice named Dr. Hughes. Plaintiff's testicles had still not descended. Dr. Hughes said that plaintiff's father had waited too long in having Paul re-examined, and that the testicles should have been surgically descended when the boy was younger. In response to Mr. Stewart's statement that he had been told not to do anything about the problem until Paul reached puberty, Dr. Hughes replied, "Well, you were told wrong." According to Mr. Stewart, Dr. Hughes did not explain to Mr. Stewart the medical basis of his opinion.[4]

In 1976, plaintiff received two operations by a military surgeon named Dr. Jackson. The first operation resulted in the successful descension of the boy's right testicle, which was diagnosed to be healthy and viable. The second operation was not successful and resulted in the removal of the left testicle. According to plaintiff's father, he never discussed with Dr. Jackson the issue of cancer or possible sterility. He assumed that the presence of one healthy testicle guaranteed that his son was fertile. Mr. Stewart testified at deposition that he has a nephew with one testicle who is "perfectly fine." After the final operation Mr. Stewart acted on the belief "that a man can function equally well with one as he can with two," and even advised his son when he got older to use a condom "because I didn't want him getting girls pregnant."

On May 28, 1985, Paul Stewart, then himself a member of the military, was examined aboard the U.S.S. Guadalcanal and requested a sperm count. The sperm count was negative.

On March 30, 1987, plaintiffs filed an administrative claim with the appropriate agency. The claim was denied and on July 27, 1988, plaintiffs commenced the instant action in this court. The administrative claim and the complaint allege that as a result of improper treatment by govern-

2. As to factual questions I view the summary judgment record in the light most favorable to the non-moving party, here the plaintiffs, resolving any doubts against the entry of judgment. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).

3. Plaintiff's father, Gene Stewart, was in the United States Air Force at the time. Plaintiff's parents were separated in 1968 and divorced in 1970, with the father being awarded custody of the child.

4. There is a dispute in the record on this important point. At deposition, Mr. Stewart testified that Dr. Hughes discussed with him neither the question of an increased risk of cancer nor the issues of fertility and possible sterility. Dr. Hughes, however, testified at desposition that Mr. Stewart was informed at the time that even if the operation were successful and either testicle were brought down into the scrotum, there was "still a very good chance that the child would be sterile."

ment physicians Paul Stewart has incurred the following injuries: 1) the surgical removal of one testicle; 2) increased risk of testicular cancer; and 3) permanent sterility.

DISCUSSION

The basic issue facing the court at this juncture is the point in time at which the statute of limitations began to run on each of Paul Stewart's claims. The limitations statute pertaining to FTCA actions provides as follows:

> A tort claim arising against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

The operative statutory language is "after such claim accrues." Plaintiff asserts that his claims accrued on May 28, 1985, the day he discovered that he was infertile. On this theory there is no limitations problem with plaintiff's claim. The government argues, on the other hand, that the date of accrual was sometime in 1976, when or shortly after plaintiff's testicle was removed, a point in time well outside the limitations period, and therefore that plaintiff's claim is barred. Neither party has put forward the suggestion that a different date of accrual may apply for each injury alleged.[5] I am convinced that this is the more sensible approach, given the peculiar circumstances of this case.

■■■ The determination of when a claim accrues for purposes of the FTCA is a question of federal law. *Tyminski v. United States*, 481 F.2d 257, 262–63 (3d Cir.1973). The Supreme Court has determined that a claim accrues within the meaning of 28 U.S.C. § 2401(b) when the plaintiff knows both the existence and the cause of his injury. *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979); *see Peterson v. United States*, 694 F.2d 943, 945 (3d Cir.1982). The rationale behind this discovery rule is that the statute is triggered as soon as the plaintiff "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress." *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir.1985). The test is an objective one; that is, the standard is not whether the injured party actually knew of the existence and cause of his injury—although the fact that he did actually know would obviously be dispositive of the issue—but whether he possessed facts that would have led a reasonable person to know of the existence and cause of the injury. *Barren by Barren v. United States*, 839 F.2d 987, 990 (3d Cir.1988).

■■■ It is beyond doubt that plaintiff's father actually knew or possessed facts that would have led a reasonable person to know of at least two of plaintiff's alleged three injuries and their causes, long before 1985, when plaintiff first discovered that he was infertile. Plaintiff's father by his own admission was told in 1968 by a treating physician that failure to surgically descend his son's testicles would result in an increased risk of testicular cancer. On that basis, the father authorized the surgery, which was unsuccessful. A reasonable person who had authorized surgery on his child on the basis of the medical opinion that refraining from doing so would lead to an increased risk of cancer, would believe, upon the failure of the operation, that his child now faced an increased risk of cancer. Plaintiff's father also actually knew of his son's loss of a testicle in 1976, following the second operation performed that year

---

**5.** Indeed, by making no mention in his brief either of his alleged injuries regarding increased risk of testicular cancer or the surgical removal of one testicle, plaintiff in effect now seems to treat his complaint against the government as consisting of only a single injury, his alleged sterility.

during which the testicle was removed. Since plaintiff's father thus possessed sufficient critical facts to be put on notice both that his son faced an increased risk of testicular cancer as far back as 1968, and, in 1976, that his son had lost a testicle, and since the FTCA's statute of limitations is not tolled due to the minority status of the claimant, *Landreth By and Through Ore v. United States,* 850 F.2d 532, 534 (9th Cir.1988); *Jastremski v. United States,* 737 F.2d 666, 669 (7th Cir.1984); *Leonhard v. United States,* 633 F.2d 599, 624 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *compare Barren by Barren v. United States,* 839 F.2d 987 (3d Cir.1988) (FTCA not tolled by injured party's mental infirmity), plaintiff's claims as they pertain to these two injuries are untimely under 28 U.S.C. § 2401(b), and are therefore barred. Summary judgment will accordingly be granted for defendant on plaintiff's claim pertaining to his loss of a testicle and increased risk of testicular cancer.

■ Plaintiff's alleged infertility is a more difficult matter. Plaintiff himself testified at deposition that he requested a sterility test in 1985 as a result of his fiancee's, not his own, concern that he might be infertile because he had only one testicle. As noted *supra,* plaintiff's father testified that he never suspected that his son might be infertile, although Dr. Hughes, the treating private urologist in 1976, testified that he warned plaintiff's father at that time that even if the operation to descend his son's testicles were successful, there was still a "very good chance" that the child would be sterile. The question therefore of whether plaintiff or his father had actual knowledge of the "very good chance" or, indeed, even of the possibility of infertility poses a genuine issue of material fact.

The factual issue notwithstanding, plaintiff's infertility claim may alternatively be found to be untimely if a reasonable person in either plaintiff's or plaintiff's father's position would have believed, at some time prior to March 30, 1985,[6] that plaintiff was or might be sterile as the result of any of the surgical procedures performed on him by military physicians. The summary judgment record provides no basis on which I can make an informed determination on this difficult issue. I am therefore unable to find that plaintiff's infertility claim accrued before May 28, 1985, the day he discovered that he was sterile. I will accordingly deny summary judgment as to the plaintiff's infertility claim, and allow the case to proceed to trial on that claim only.

An appropriate order follows.

## ORDER

AND NOW, this 7th day of June, 1989, upon consideration of the government's Motion for Summary Judgment and the plaintiffs' response thereto, and for the reasons explained in the foregoing memorandum, it is hereby ORDERED that the motion is GRANTED in part and DENIED in part. The court shall try only plaintiff's infertility claim. Plaintiff's other claims are barred by the statute of limitations.

It is further ORDERED that, upon finding that separate trials will be conducive to expedition and economy, the case is BIFURCATED. The liability part of the case will be heard first, the damages trial to follow in the event that the court finds liability.

---

**6.** That is, two years prior to the filing of plaintiffs' administrative claim.