FEDERAL DEPOSIT INSURANCE CORPORATION *vs.* AIR
ATLANTIC, INC., & another[1]
(and a companion case[2]).

Middlesex.  April 4, 1983. — August 17, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Bank.  Federal Deposit Insurance Corporation.  Jurisdiction,* Claim
against federal agency. *Practice, Civil,* Summary judgment. *Se-
cured Transactions.  Uniform Commercial Code,* Secured transac-
tions, Sale of collateral. *Words,* "Commercially reasonable."

Claims against the Federal Deposit Insurance Corporation alleging, re-
spectively, that the agency did not act in a commercially reasonable
manner in disposing of securities pledged to an insolvent State bank as
collateral securing certain promissory notes, and that the agency con-
verted the pledged securities, were "claims against the United States,"
cognizable under 28 U.S.C. § 1346 (b) (1976), and thus the exclusive
remedy was against the United States in an appropriate Federal Dis-
trict Court.  [953-956]
That the Federal Deposit Insurance Corporation could have obtained a
higher price at a different time for securities pledged to an insolvent
State bank would not, if proved, establish that the agency's sale of the
securities was conducted other than in a "commercially reasonable"
manner within the meaning of G. L. c. 106, § 9-504 (3).  [956-957]
A statement by the Federal Deposit Insurance Corporation of its intent to
"redeem" certain promissory notes after the borrowers' default did not
constitute a proposal under G. L. c. 106, § 9-505 (2), to retain col-
lateral in satisfaction of any of the notes.  [957-958]

CIVIL ACTION commenced in the Superior Court on March
15, 1978.

The case was heard by *Young,* J., and *Sullivan,* J., on mo-
tions for summary judgment.

[1] Dwight L. Rockwell.

[2] Shirley W. Elderkin *vs.* Federal Deposit Insurance Corporation.

CIVIL ACTION commenced in the Superior Court on June 8, 1978.

The case was heard by *Young, J.*, on a motion for summary judgment.

After review of each case was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Michael Edward Casey* for Dwight L. Rockwell & another.

*Louis A. Rodriques* (*Barbara J. Levine* with him) for Federal Deposit Insurance Corporation.

O'CONNOR, J. Surety Bank and Trust Company (Surety Bank) closed on May 12, 1972, by order of the Massachusetts Commissioner of Banks. Shortly thereafter, the Commissioner appointed the Federal Deposit Insurance Corporation (FDIC) to liquidate the assets of Surety Bank pursuant to G. L. c. 167, § 26. A single justice of this court confirmed the appointment on May 26, 1972. Acting in its capacity as liquidator, FDIC commenced the first of the two actions here on appeal. In that action, FDIC seeks recovery from the defendant Air Atlantic, Inc. (Air Atlantic), as maker of a promissory note dated January 26, 1971, and from the defendant Rockwell as an endorser of that note and as maker of two other notes dated February 11, 1972, and February 19, 1972. The defendants answered and counterclaimed. Although the counterclaim, which is reproduced in the record, is far from clear, the defendants in their brief characterize the counterclaim as a claim that FDIC did not sell in a commercially reasonable manner certain securities pledged as collateral for the February 11, 1972, note. The defendants claim that, as a consequence, they are entitled to recover from FDIC the difference between the amount for which the collateral could have been sold, had it been sold in a commercially reasonable manner, and the amount due on the February 11, 1972, note. FDIC accepts in its brief that characterization of the counterclaim, as do we.

In the second action, Elderkin alleges that FDIC converted securities belonging to her. These are the same securities which the counterclaimants in the first action allege were pledged as collateral for the February 11, 1972, note. FDIC counterclaimed in that action, but the counterclaim was later dismissed by agreement of the parties, and is not before us.

Summary judgment for FDIC was entered in the Superior Court on the counterclaim of Air Atlantic and Rockwell in the first action, and for FDIC in the second action. Entry of these judgments was ordered on the ground that the courts of the Commonwealth lacked subject matter jurisdiction. Subsequently, summary judgment was also entered for FDIC on its claims as plaintiff in the first action. Air Atlantic and Rockwell appeal from the judgments against them on FDIC's claims and on their counterclaim in the first action, and Elderkin appeals from the judgment against her in the second action. The appeals were transferred to this court on our own motion. We affirm all the judgments.

On January 26, 1971, Rockwell, on behalf of Air Atlantic, signed a note payable to Surety Bank in the amount of $5,545.80, for which Air Atlantic received valuable consideration. Rockwell personally endorsed that note. On February 11, 1972, Rockwell signed a personal note in the amount of $22,500, at eight per cent annual interest due sixty days thereafter. This note was the last in a series of renewals of a note that had been executed in June, 1971, by Rockwell and Elderkin, and was secured by the collateral given by Elderkin. The parties agree that the collateral secured all renewal notes, including the February 11, 1972, note. The third note was a personal note signed by Rockwell on February 19, 1972, for $4,000, at nine per cent annual interest, due on May 19, 1972. Rockwell received valuable consideration for that note.

Following the appointment of FDIC as liquidator of Surety Bank's assets, FDIC notified Air Atlantic, Rockwell, and Elderkin of outstanding balances on their notes. On

October 6, 1972, FDIC informed Elderkin by letter that FDIC had demanded payment by Rockwell of past due notes, that payment had not been made, and that FDIC had "no alternative but to foreclose and sell" the collateral which secured those notes.

By two letters sent to FDIC in the fall of 1972, Elderkin, through her attorney, declared that FDIC had no right to the securities, and demanded that they be returned. In a letter dated December 19, 1972, FDIC informed Elderkin's attorney that the securities secured the short-term note executed in June, 1971, as well as the extensions and renewals of the note. The letter continued: "We are therefore informing you and your client that payment of said note is overdue; that demand for payment has been made on Mr. Rockwell but he has not responded; and that such collateral will not be redeemed and the proceeds applied against the debts. Your client may, however, choose to pay off the debt, in which case the securities will be released to her."

In December, 1972, the collateral, which consisted of shares in certain mutual funds, was valued at $47,224.22. Almost five years later, in December, 1977, FDIC began the process of selling Elderkin's securities. On December 20, 1977, FDIC instructed transfer agents to transfer ownership of the securities to FDIC, and when that was accomplished, FDIC instructed the appropriate brokers to sell the securities for FDIC's account. The securities were thereafter sold for $28,445.06. The entire proceeds of the sale were applied to the balance due on the February 11, 1972, note.

First, we consider whether FDIC was entitled to summary judgment on the counterclaim of Air Atlantic and Rockwell in the action instituted by FDIC, and on the claim of Elderkin in the action commenced by her, due to lack of subject matter jurisdiction. The issue is whether these claims could be litigated only in a Federal court. The relevant statutes are 12 U.S.C. § 1819, Fourth (1976), and the Federal Tort Claims Act, 28 U.S.C. § 1346, and §§ 2671-2680 (1976).

Section 1819, Fourth, of 12 U.S.C. (1976), provides that FDIC shall have power "[t]o sue and be sued, complain and defend, in any court of law or equity, State or Federal." However, that power is modified by 28 U.S.C. §§ 2679 (a), 1346 (b) (1976).

Section 2679 (a) of 28 U.S.C. (1976) provides that "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346 (b) of this title, and the remedies provided by this title in such cases shall be exclusive." FDIC is a Federal agency within the meaning of § 2679 (a). *Federal Deposit Ins. Corp.* v. *Citizens Bank & Trust Co.*, 592 F.2d 364, 369 n.5 (7th Cir.), cert. denied, 444 U.S. 829 (1979). *Safeway Portland Employees' Fed. Credit Union* v. *Federal Deposit Ins. Corp.*, 506 F.2d 1213, 1215 (9th Cir. 1974). *Davis* v. *Federal Deposit Ins. Corp.*, 369 F. Supp. 277, 279 (D. Colo. 1974). Therefore, if the appellants' claims against FDIC are cognizable under 28 U.S.C. § 1346 (b) (1976), suits against FDIC on those claims are not authorized, and the only remedies available to the appellants are provided by title 28.

The appellants' claims against FDIC are cognizable under 28 U.S.C. § 1346 (b) (1976). That section provides that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." The claims are for money damages for loss of property caused by the wrongful act or omissions of employees of the Federal government. Furthermore, since they are claims against FDIC in its corporate capacity, they are claims against the United States. *Colonial Bank & Trust Co.* v. *American Bankshares Corp.*, 439 F. Supp. 797, 803 (E.D. Wis. 1977).

Were such tort claims against a Federal agency not recognized as "cognizable under section 1346 (b)," § 2679 (a) would be meaningless. The expressed limitation of authorization to sue would never apply if a tort claim against a Federal agency were not deemed to be a claim against the United States, and, therefore, cognizable under § 1346 (b). Since the appellants' claims are cognizable under 28 U.S.C. § 1346 (b) (1976), suit against FDIC on those claims is not authorized, and the appellants' exclusive remedy is against the United States, *Davis* v. *Federal Deposit Ins. Corp.*, *supra* at 279, *Freeling* v. *Federal Deposit Ins. Corp.*, 221 F. Supp. 955, 957 (W.D. Okla. 1962), in an appropriate United States District Court, under the Federal Tort Claims Act. *Federal Deposit Ins. Corp.* v. *Citizens Bank & Trust Co.*, *supra* at 369. *Gleason* v. *United States*, 458 F.2d 171, 173 (3d Cir. 1972).

The appellants' reliance on *Federal Deposit Ins. Corp.* v. *Sumner Fin. Corp.*, 602 F.2d 670 (5th Cir. 1979), and *Federal Deposit Ins. Corp.* v. *Ashley*, 408 F. Supp. 591 (E.D. Mich. 1976), rev'd, 585 F.2d 157 (6th Cir. 1978), is misplaced. It is arguable that those cases stand for the proposition that a suit against FDIC in its capacity as receiver for an insolvent State bank is properly brought in a State court, pursuant to the exception clause in 12 U.S.C. § 1819, Fourth (1976),[3] but the alleged liability of FDIC here is based on tortious conduct of FDIC itself, rather than on its successor liability as receiver for torts committed by Surety Bank. Therefore, the appellants' claims are against FDIC in its corporate capacity rather than in its capacity as receiver, the claims do not involve "only the rights or obligations of

---

[3] "All suits of a civil nature at common law or in equity to which the Corporation shall be a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy . . . *except* that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States" (emphasis added). 12 U.S.C. § 1819, Fourth (1976).

depositors, creditors, stockholders, and [Surety Bank] under State law," and the exception clause in 12 U.S.C. § 1819, Fourth, does not apply. The nature of the claims is not affected by the fact that the pleadings describe FDIC as liquidating agent of Surety Bank. Summary judgment was properly entered against Air Atlantic and Rockwell on their counterclaims in the action brought by FDIC, and against Elderkin in the second action.

Next, we consider whether summary judgment was properly entered in favor of FDIC in its action to recover on the three notes. In order to be entitled to summary judgment in its favor, FDIC has the burden of showing by affidavit or other supporting materials that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Community Nat'l Bank* v. *Dawes,* 369 Mass. 550, 554 (1976). The appellants argue that a genuine issue of material fact is presented by their contention that it was not "commercially reasonable" within the meaning of G. L. c. 106, § 9-504 (3), for FDIC to retain the collateral for five years while the market declined "ruinously . . . , which decline was notorious and a matter of public knowledge." They argue that FDIC's conduct precludes recovery on the notes beyond the sale proceeds. We need not decide whether FDIC would be precluded from recovery if its disposition of the collateral were commercially unreasonable, because we are satisfied that the disposition of the collateral was commercially reasonable, regardless of whether the market declined "ruinously" and the decline was "notorious," thereby making the entry of summary judgment for FDIC appropriate.

General Laws c. 106, § 9-507 (2), as appearing in St. 1979, c. 512, § 7, provides that "[t]he fact that a better price could have been obtained by a sale at a different time . . . from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." No exception is made for serious and notorious market declines. This section is dispositive of the appellants' contentions.

Although G. L. c. 106, § 9-207 (1), as appearing in St. 1979, c. 512, § 7, provides that "[a] secured party must use reasonable care in the custody and preservation of collateral in his possession," the duty of reasonable care imposed by § 9-207 (1) is confined to the physical care of the collateral. See Restatement of Security § 17 (1941). "The pledgee is not liable for a decline in the value of pledged instruments, even if timely action could have prevented such decline." *Id.* at § 18 comment a. The decisions of other jurisdictions are in accord. See *Capos* v. *Mid-America Nat'l Bank,* 581 F.2d 676, 680-681 (7th Cir. 1978); *Federal Deposit Ins. Corp.* v. *Webb,* 464 F. Supp. 520, 527 (S.D. Tenn. 1978); *New Jersey Bank* v. *Toffler,* 139 N.J. Super. 161, 167 (1976); *Tepper* v. *Chase Manhattan Bank,* 376 So. 2d 35, 36 (Fla. Dist. Ct. App. 1979). Given the volatility of the stock market, a requirement that a secured party sell shares in mutual funds, held as collateral, at a particular time, would be to shift the investment risk from the borrower to the lender. But "[i]t is the borrower who makes the investment decision to purchase stock. A lender in these situations merely accepts the stock as collateral, and does not thereby itself invest in the issuing firm. Nor, unless otherwise agreed, does the lender undertake to act as an investment adviser, although imposing a duty on the lender to sell the stock at the 'reasonable' time would foist that role upon it." *Capos* v. *Mid-America Nat'l Bank, supra* at 680.

In addition to arguing that FDIC's retention of the collateral was commercially unreasonable under G. L. c. 106, § 9-504 (3), the appellants also argue that FDIC must be deemed to have made an election to retain the collateral as full payment of the notes, thus discharging them. They offer two reasons for that conclusion: first, that retention of the collateral was unfair and unreasonable, and second, that by letter dated December 19, 1972, FDIC notified Elderkin that due to default on the February 11, 1972, note, FDIC would proceed to "redeem" the note. We make no attempt to state all the reasons for rejecting the appellants' reasoning. It is sufficient to note that the appellants' first

assertion is but a variation of the argument that retention of the collateral was "commercially unreasonable" under G. L. c. 106, § 9-504 (3), and we reject it for the reasons that we rejected that argument. The appellants' second theory is likewise without merit. General Laws c. 106, § 9-505 (2), as appearing in St. 1979, c. 512, § 7, provides that "a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor." A written proposal is necessary. *Priggen Steel Bldgs. Co.* v. *Parsons,* 350 Mass. 62, 63-64 (1966). FDIC's notice of intention to redeem cannot properly be considered a proposal to retain the collateral in satisfaction of any of the notes.

We conclude that summary judgments in favor of FDIC on its claims, on the counterclaim of Air Atlantic and Rockwell, and on Elderkin's claim, were properly entered in the Superior Court.

*Judgments affirmed.*