**BANK OF BOSTON INTERNATIONAL OF MIAMI, Plaintiff,**

**v.**

**Roberto ARGUELLO TEFEL and Matilde Osorio de Arguello, Defendants.**

No. 84 Civ. 1023.

United States District Court,
E.D. New York.

Sept. 23, 1986.

Robert A. Horowitz, Kelley Drye & Warren, New York City, for plaintiff.

Stephen P. Hoban, Buckley, Kremer, O'Reilly, Pieper, Hoban & Marsh, Mineola, N.Y., for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

In 1974, defendant Roberto Arguello Tefel ("Mr. Arguello") borrowed $300,000 from Bank of Boston Trust Company (Bahamas), Ltd. ("BBTC") pursuant to a loan agreement and promissory note. Defendant Matilde Osorio de Arguello ("Mrs. Arguello") was also a signatory to the loan agreement. The defendants defaulted on the loan by failing to make the required payment of principal and interest on January 15, 1979. No payments have been made since that date. In November 1979, the loan agreement and promissory note were assigned by BBTC to plaintiff Bank of Boston International of Miami ("BBIM"). In March 1984, this suit was instituted against defendants, who now reside in the New York area, seeking $125,-000 in unpaid principal and the accrued interest from January 15, 1979. Plaintiff now seeks summary judgment on its action on the promissory note and moves to dismiss defendants' counterclaim for failure to state a claim upon which relief can be granted. For the reasons stated below, plaintiff's motion will be granted in full.

### I. *Plaintiff's Motion for Summary Judgment*

It is undisputed that the amount of debt sought to be recovered by plaintiff has not been paid by the defendants. Defendants, however, have asserted twenty-four affirmative defenses which, they argue, bar recovery against one or both of them. The Court will consider these defenses seriatim.

1. Defendants argue that BBIM is not the real party in interest in this suit. This suit was originally instituted by BBTC. Defendants moved to dismiss the suit for lack of subject matter jurisdiction, observing that, as then constituted, neither party was a United States citizen. In response, BBIM, relying on the 1979 assignment, moved to be substituted as party plaintiff. Defendants opposed this substitution, arguing that the assignment was a collusive effort to create diversity jurisdiction in violation of 28 U.S.C. § 1359. In a Memorandum and Order dated October 9th, 1984, the Court rejected this argument, denying defendants' motion to dismiss and allowing the substitution of BBIM. Because the Court has already found defendants' first affirmative defense to be without merit, it cannot be a bar to plaintiff's motion for summary judgment.

2. Defendants argue that BBTC is a necessary party under Fed.R.Civ.P. 19 whose joinder would divest the Court of jurisdiction. BBIM has conceded that it "stands in the shoes of" BBTC and thus that any defense available to defendants against BBTC may be asserted against it. Because "complete relief [can] be accorded among those already parties," Fed.R.Civ.P. 19(a), BBTC is neither a necessary nor indispensable party to this action.

3. Defendants argue that the action is barred by the doctrine of collateral estoppel. With the proceeds of the loan at issue in this case, Mr. Arguello and four other Nicaraguan businessmen purchased a controlling interest in Textiles Fabricato de Nicaragua, S.A. ("Fabritex"), a Nicaraguan

corporation. The purchased shares of the corporation became collateral for the loan. In 1979, after the revolution in Nicaragua, the new Nicaraguan government expropriated the property of the Arguellos, including these shares. In the fall of 1979, BBIM attempted to offset the corporate funds of Fabritex, which were on deposit, to recover some of the unpaid debt. Fabritex sued BBIM in Florida federal court, arguing that BBIM could not use corporate funds to offset purely personal debts. BBIM counterclaimed on the theory that, through Fabritex, it was suing the Nicaraguan government on a tort theory for the diminished value of its collateral. According to counsel for BBIM, it was determined that Nicaragua could not be sued through Fabritex because the Nicaraguan government had not expropriated Fabritex itself but only the shares owned by Mr. Arguello and the other businessmen. The suit was settled with the counterclaim being dropped and the offset funds returned to Fabritex.

 The defendants' claim that this litigation should be given preclusive effect seems to rest on the fact that during the course of the litigation, BBIM opposed the characterization of Mr. Arguello and the other debtors as necessary and indispensable parties. This claim is without merit. As a matter of issue preclusion, nothing was decided in the earlier proceeding that could bar the relief sought here. Collateral estoppel has no application to issues that merely could have been decided. Although claim preclusion may operate to prevent litigation of a matter that could have been raised in a prior suit between the same parties, the defendants have cited no authority for the proposition that plaintiff's assertion of a counterclaim against Fabritex obligated it to assert its claims against defendants in the same litigation.

 4. Defendants argue that they are excused from performance by the doctrine of illegality. In 1978, the Nicaraguan government decreed certain currency restrictions that barred defendants from repaying the debt in United States dollars as provided for in the loan agreement. Two observations are in order with respect to this defense. First, insofar as no currency restrictions were in effect when the agreement was made, the contract itself is not illegal and the issue is really one of impossibility of performance. Second, insofar as the doctrine of impossibility is implicated, the impossibility was only temporary; defendants have lived in the United States, unhindered by the currency restrictions, since 1979. *See infra,* p. 1427.

 5. Defendants argue that enforcement of their obligations would violate the act of state doctrine. As recently explained by the Second Circuit Court of Appeals, "[t]he act of state doctrine operates to confer presumptive validity on certain acts of foreign sovereigns by rendering non-justiciable claims that challenge such acts." *Allied Bank International v. Banco Credito Agricola de Cartago,* 757 F.2d 516, 520 (2d Cir.1985). With this understanding of the doctrine in mind, it is apparent that defendants' invocation of it is unavailing because plaintiff's claim does not challenge the validity of any act of the Nicaraguan government. First, plaintiff's maintenance of this action in no way conflicts with that government's expropriation of defendants' property. Defendants can make no plausible argument that the expropriation was intended to have any effect on, much less to extinguish, the debt on which this action is based.

Second, this action does not call into question the validity of Nicaragua's currency restrictions. While it may well be the case that were defendants still living in Nicaragua, an American court might be barred from requiring defendants to violate these restrictions by ordering that the debt be repaid in American dollars, because the Arguellos are now residents of the United States, those restrictions are irrelevant to this case.

 6. Defendants argue that their obligations have been nullified by the doctrine of frustration of purpose. In invoking this defense, defendants point to the loss of

their holdings in Fabritex. This defense is also without merit. Put simply, defendants' purpose in entering into this transaction with plaintiff was to borrow money. That purpose was fulfilled when defendants received the loan proceeds from plaintiff and is unaffected by subsequent events.

7. Citing §§ 1–201(19), 1–203 and 2–103 of the Uniform Commercial Code, defendants argue that plaintiff failed to act in good faith and in a commercially reasonable manner. According to defendants, plaintiff's lack of good faith is evidenced by its settlement of the suit against Fabritex, its failure to seek recourse against the Nicaraguan government and its refusal to accept non-U.S. currency. The Court finds that this defense presents no bar to a grant of summary judgment. Although defendants argue that the issue of good faith typically involves questions of fact, their memorandum of law is wholly devoid of any legal argument as to how these actions constitute bad faith sufficient to relieve them of their obligations under the loan agreement. With respect to the first two cited items, the plaintiff did attempt to recoup some of its money in its suit against Fabritex. Had the lawsuit been successful, defendants would have benefited. That it ended without success should not cause plaintiff to forfeit its right to proceed against defendants. With respect to the alleged refusal to accept other currency, the Court is hard pressed to understand why plaintiff's reliance on the specific terms of the loan agreement should constitute bad faith.

8. Defendants argue that they are excused by the doctrine of impossibility of performance. This defense again relies on the currency restrictions previously discussed. As noted earlier, this impossibility was a temporary one, having ended with the departure of defendants from Nicaragua, and is no bar to the present action. *See generally* Calamari & Perillo, *Contracts,* § 13–11 at 497 (2d ed. 1977) ("Temporary impossibility ... merely suspends the duty of performance until the impossibility ceases.").

9. Defendants argue that Nicaraguan law prohibited the assignment of the debt to plaintiff. In deciding the previous motion regarding the appropriate statute of limitations, the Court found it unnecessary to decide what law should govern this agreement. The promissory note states that it "shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts." Paragraph 8 of the loan agreement says that "this instrument and said promissory notes refer to one and the same loan and constitute the same credit instrument." Defendant has advanced no convincing argument as to why these provisions should not be given effect. Thus, Nicaraguan law is not at issue. Moreover, paragraph 11 of the loan agreement explicitly authorized BBTC, the previous holder of the note, "to transfer this credit with its guarantees to such individual or corporation as it may judge advisable."

10. Defendants argue that no demand was made on them. This defense, which also relies on the requirements of Nicaraguan law, is unavailing for the reasons just stated. Also, the note explicitly waives any demand requirement.

11. Defendants argue that the action is barred by prescription under Nicaraguan law. This claim was briefed, argued and decided adversely to defendants in this Court's Memorandum and Order dated January 17, 1986. 626 F.Supp. 314.

12. Defendants argue that Mr. Osorio, who signed the promissory note, did not have authority to do so on behalf of Mr. Arguello. This argument, at least in its broadest form, is belied by Mr. Arguello's own affidavit, which states that the note was signed, "pursuant to a power of attorney on [his] behalf." Affidavit of Roberto Arguello at ¶ 16. He argues, nevertheless, that he did not authorize Mr. Osorio to sign a note containing a Massachusetts choice-of-law provision. Plaintiff responds, correctly in the Court's view, that

it had no notice of any limitation on Mr. Osorio's authority and that, in any case, Mr. Arguello ratified the signing of the note by accepting the money according to its terms.

 13. Defendants argue that, through plaintiff's conduct of the Fabritex litigation, it elected "to retain the collateral in satisfaction of the obligation" pursuant to U.C.C. § 9–505(2). Plaintiff responds that it made no such election, and stands ready to return the pledged shares of Fabritex upon payment of the debt. Without examining once more the circumstances of the Fabritex litigation, it is plain that this defense is without merit:

> The Uniform Commercial Code entitles a creditor to retain and protect collateral received for a debt as security until the debt is satisfied.... § 9–207. Such retention cannot be equated under the statute with an election to satisfy the debt with the collateral only, in the absence of statutorily required written notice from the creditor that the creditor has made such an election. U.C.C. § 9–505(2)

*Hanam, B.V. v. Kittay*, 589 F.Supp. 1042, 1048 (S.D.N.Y.1984). This is the position taken by the Supreme Judicial Court of Massachusetts. *Federal Deposit Insurance Corporation v. Air Atlantic, Inc.*, 389 Mass. 950, 452 N.E.2d 1143, 1148 (1983) ("A written proposal is necessary."). *Accord Chrysler Credit Corp. v. Mitchell*, 94 A.D.2d 971, 464 N.Y.S.2d 96, 97 (4th Dept. 1983) ("An election to take the collateral in full satisfaction will not be implied; it must be made by written notice to the debtor."). There having been no written notice to defendants of a proposal to retain the collateral, this defense must fail.

 14. Defendants argue that plaintiff's settlement of the lawsuit with Fabritex constituted a disposition of the collateral without the five days' notice required by the pledge agreement. In response, plaintiff, noting that the expropriation of defendants' stock had already occurred, argues that no disposition has taken place and that the settlement with Fabritex did not affect defendants' rights with respect to that stock in any way. The Court finds no reason to disagree.

 15. Defendants argue that certain alleged assurances given to them by Alfredo Restrepo, an officer of BBTC constitute a waiver which discharged their obligations. As plaintiff argues, these oral statements, even if proven, do not suffice under the Uniform Commercial Code. Section 3–605(1)(b) provides that the holder of an instrument may discharge a debtor without consideration "by renouncing his rights by a writing signed and delivered ... to the party to be discharged." *See Community Nat'l Bank and Trust Co. v. Gold*, 45 A.D.2d 947, 359 N.Y.S.2d 118, 119 (1st Dept.1974), *aff'd*, 37 N.Y.2d 831, 378 N.Y.S.2d 29, 340 N.E.2d 465 (1975) ("A promissory note may not be effectively cancelled by a simple oral statement."). The only "writings" cited by defendants, various documents relating to the Fabritex litigation, plainly do not satisfy this section.

16. Relying on the same alleged assurances, defendants argue that plaintiff should be barred from enforcing the debt on a theory of promissory estoppel. This argument must be rejected for the reasons just stated. To accept defendants' argument would be to nullify the express requirements of § 3–605. Although the UCC does not supersede all traditional contract principles, *see* § 1–103, defendants have cited no case, and the Court has found none, which allows an estoppel defense to effectuate an otherwise invalid oral waiver. Moreover, the alleged assurance, that "Bank of Boston would find a way to solve the problem that would satisfy [the Arguellos]," Affidavit of Roberto Arguello at ¶ 16, could not reasonably have induced defendants to believe that Bank of Boston would never seek any further payments from them.

 17. Citing § 3–502 of the UCC, defendants argue that plaintiff's delays in fulfilling conditions of enforcement, including, *inter alia*, demand, presentment, and notice of dishonor, have discharged defendants' obligations. This defense completely

ignores the fact that, in the promissory note, defendants expressly waived any condition precedent to enforcement, including the three cited above. *See* UCC § 3–511(2)(a) ("Presentment or notice or protest as the case may be is entirely excused when the party to be charged has waived it expressly ...").

18. Defendants argue that plaintiff unjustifiably impaired the collateral within the meaning of UCC § 3–606(1)(b). This suretyship defense, as defendants recognize, is not available to the maker of the note and thus may not be asserted by Mr. Arguello. Assuming that Mrs. Arguello is liable as a guarantor and not as a maker, it is nevertheless inapplicable.[1] The plaintiff is not responsible for the loss in the value of the stock caused by the expropriation. *See* Anderson, *Uniform Commercial Code*, § 3–606:18 at 575 (1984) ("UCC § 3–606 discharges a party only when the act of the holder has impaired the collateral."). Nor was plaintiff required to attempt to forestall the expropriation by proceeding against the collateral when defendants first defaulted. *Cf. id.* § 3–606:17 at 574 ("There is no impairment of collateral when ... the creditor did not proceed against the collateral before the debtor became bankrupt."). Finally, the Court fails to see how the settlement of the Fabritex litigation affected Mrs. Arguello's rights, if any, to proceed against the corporation or the Nicaraguan government.

19. Defendants argue that plaintiff renounced the debt pursuant to UCC §§ 3–601 and 3–605. This defense, which again relies on oral statements, is meritless for the reasons stated earlier with respect to defendants' fifteenth defense. *See* p. 1428 *supra.*

20. Defendants claim that plaintiff's action is barred by laches. The Court has already determined, in its prior opinion, that this action is timely.

21. Defendants argue that Mrs. Arguello's liability as a surety was discharged by various modifications in the obligations which were made without her consent. This defense ignores paragraph 13 of the loan agreement signed by Mrs. Arguello in which "she waives the right to be notified of any assignment, novation or extension that may be made in relation to this contract, as she here and now authorizes the Bank to make them, without the surety she now gives being extinguished by said fact...."

22. Defendants argue that the amount owed to plaintiff is in doubt. As plaintiff points out, the amount seized and ultimately returned to Fabritex and the amounts paid by other debtors have no bearing on defendants' liability.

23. Defendants argue that Mrs. Arguello is relieved of her obligation because of fraud on plaintiff's part. This defense merely restates with a new label several of the arguments already rejected by the Court.

24. Defendants argue that plaintiff's actions in the Fabritex litigation deprived Mrs. Arguello of her subrogation rights. This argument, which is almost identical to the eighteenth defense, is likewise without merit.

## II. *Plaintiff's Motion to Dismiss Defendants' Counterclaim*

Defendants' counterclaim, which complains of plaintiff's attempt to recover the debt at issue, is alleged to state four causes of action. None is meritorious. First, plaintiff's efforts, which the Court has found to be well-founded, simply cannot be said to be "so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Fischer*

---

1. There is some doubt as to whether Mrs. Arguello is a maker or a guarantor of the loan at issue. Although plaintiff cites language in the loan agreement describing her as a "principal payer," she is also referred to as a "surety." The Court need not resolve this issue. Assuming that Mrs. Arguello is not a co-maker but only a guarantor, the Court finds, for reasons stated in the text, that the additional suretyship defenses asserted by her do not present a bar to summary judgment.

*v. Maloney,* 43 N.Y.2d 553, 558, 402 N.Y. S.2d 991, 992–93, 373 N.E.2d 1215 (1978). *See also Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) ("New York courts have been very strict in applying these principles."). The factual foundation of this claim, that plaintiff is not the real party in interest and has wrongfully invoked federal jurisdiction, has already been rejected by the Court. *See* p. 1425 *supra.*

■ Second, plaintiff cannot be sued on a theory of prima facie tort. Defendants' claim is "insufficient to state a cause of action for prima facie tort insofar as it fails to plead special damages." *Curiano v. Suozzi,* 63 N.Y.2d 113, 117, 480 N.Y.S.2d 466, 469, 469 N.E.2d 1324 (1984). *See also Lincoln First Bank of Rochester v. Siegel,* 60 A.D.2d 270, 400 N.Y.S.2d 627, 633 (4th Dep't 1977) ("Special damages must be alleged with sufficient particularity to identify actual losses."). In addition, "there is no recovery in prima facie tort unless malevolence is the *sole motive* for [an] otherwise lawful act ..." *Burns, Jackson, Miller, Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 333, 464 N.Y.S.2d 712, 721, 451 N.E.2d 459 (1983) (emphasis added). Defendants acknowledge that plaintiff's actions were motivated not only by "a desire to cause harm" to defendants, *Reale v. IBM Corp.,* 34 A.D.2d 936, 937, 311 N.Y. S.2d 767, 768–69 (1st Dep't 1970), *aff'd,* 28 N.Y.2d 912, 322 N.Y.S.2d 735, 271 N.E.2d 565 (1971), but by its own economic self-interest. *See* Defendants' Answer at ¶ 114.

■ Third, defendants' attempt to assert a claim for malicious prosecution is premature:

> [T]hat tort lies only when the judicial proceeding "begun in malice, without probable cause, ... finally ends in failure." It cannot be asserted as a counterclaim in the very action it challenges as malicious.

*Kalso Systemet, Inc. v. Jacobs,* 474 F.Supp. 666, 670 (S.D.N.Y.1979) (*quoting Grant v. City of Rochester,* 68 Misc.2d 358, 360, 326 N.Y.S.2d 691, 693 (Sup.Ct.1971)). This claim is also without merit:

> In order to establish a claim for malicious prosecution, ... a plaintiff must show among other matters that there was some interference with his person or property. This requirement is satisfied only if a court issues a provisional remedy, such as an attachment, an order of arrest or an injunction. No such remedy was issued in connection with [this] proceeding.

*Tedeschi v. Smith Barney, Harris Upham & Co., Inc.,* 548 F.Supp. 1172 (S.D.N.Y. 1982).

■ Finally, defendants' claim under the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.,* is also subject to dismissal. First, as plaintiff argues, it appears that any practices complained of occurred more than one year before defendants interposed their counterclaim. *See id.* § 1692k(d) ("An action to enforce any liability created by this subchapter may be brought ... within one year from the date on which the violation occurs."). More fundamentally, the Court is doubtful whether collection of the purely business-related debt involved in this action is governed by the statute on which defendants rely. *See id.* § 1692a(5) (defining "debt" as "any obligation ... of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services, which are the subject of the transaction are primarily for personal, family, or household purposes ...").

### Conclusion

Plaintiff's motion for summary judgment on its claim and for dismissal of defendants' counterclaim is granted.

SO ORDERED.