Fabricant, J.
INTRODUCTION
The parties to this action are Theodore Scafidi, former Treasurer of the City of Newton, and Lumbermens Mutual Casually Co., which issued a bond for Scafidi’s faithful performance of his duties in that position. The dispute arises from Lumberman’s actions with respect to $310,000 that Scafidi posted as collateral, pursuant to his indemnity agreement with Lumbermens, for a claim made by the City against the bond. Lumbermens now moves for summary judgment on all counts of Scafidi’s complaint. For the reasons that follow, Lumbermens’ motion is allowed in part and denied in part.
FACTUAL BACKGROUND
Considered in the light most favorable to Scafidi, the undisputed facts are as follows. Scafidi was Treasurer of Newton for approximately 24 years, ending with his retirement in February 1991. As required by G.L.c. 41, §35, Scafidi annually gave the City a bond to secure the faithful performance of his duties. For the year 1990, as well as other years, Scafidi gave a surety bond issued by Lumbermens, pursuant to an indemnity agreement between Scafidi and Lumbermens. The bond for 1990 was in the amount of $310,000.
The indemnity agreement provided, in pertinent part, that Scafidi would indemnify Lumbermens against “all loss, liability, costs, damages, attorneys fees and expenses whatever" that Lumbermens might “sustain or incur by reason of executing said bond, in making any investigation on account thereof, in prosecuting or defending any action which may be brought in connection therewith, in obtaining a release therefrom, and in enforcing any of the agreements herein contained ...” The agreement further provided that, upon demand, Scafidi would deposit with Lumbermens “current funds" in the amount of any reserve Lumbermens considered necessary to cover any claim under the bond, “or for any reason whatsoever,” and that such funds would be held by Lumbermens as collateral.
In December of 1990, Newton lost close to half a million dollars as a result of the failure of a bank in which Scafidi had deposited over a million dollars of the City’s funds. By letter to Lumbermens dated February 11, 1991, signed by an Assistant City Solicitor, Newton made a claim for its loss under the bond. After investigation, on December 23, 1991, Lumbermens denied the City’s claim.[1] The City has not pursued its claim by filing suit against either Lumbermens or Scafidi, nor have either of them taken any action to obtain either an indication from the City of its intentions, or an adjudication by a court of the City’s legal rights, with respect to the claim.[2]
In April of 1991, while its investigation of Newton’s claim was in progress, Lumbermens exercised its right under the indemnity agreement to demand that Scafidi post collateral. After some negotiations, in January of 1992 Scafidi and his wife gave Lumbermens a mortgage on their residence in Newton. Some eighteen months later, in June of 1993, the Scafidis sought to sell the residence. After further negotiation, Lumbermens agreed to discharge the mortgage, with $310,000 of the sales proceeds to be held in escrow by Scafidi’s attorney, pending agreement between the parties as to how the funds would be held. There was a delay of some three months in Lumbermens’ executing a discharge in a form satisfactory to the attorney for the bank financing the purchase. During this period, Scafidi’s attorney held the funds in escrow.[3]
In July of 1993, while awaiting the mortgage discharge, Scafidi requested that the funds be invested in variable rate annuities. Lumbermens did not refuse, but insisted on certain arrangements it considered necessary to protect its interest. Between July of 1993 and September of 1994, attorneys and financial representatives for the parties negotiated over the precise terms of the arrangements to be made regarding the investment. In September of 1994, Lumbermens released the funds to Scafidi’s financial advisor for the purchase of the annuity, withholding $ 13,000 to cover legal expenses it had incurred, primarily in connection with the negotiations regarding the investment. At that time Lumbermens provided Scafidi with a breakdown of its expenses.[4]
Within two weeks of the transfer, the financial advisor sent a letter to Scafidi, with a copy to *549 Lumbermens, indicating that “(a]ll would appear to be in order except" that it would need written permission from Lumbermens’ counsel in order to “allocate monies among the annuity’s funds as market conditions dictate.” The financial advisor held the funds in a money market account while awaiting such permission. Apparently neither Scafidi nor Lumbermens acted on this notification until the financial advisor sent another letter, in March of 1995, this time addressed to Lumbermens’ counsel. The attorney responded, the day after his receipt of that letter, indicating that under the terms of the arrangement regarding investment of the funds, no such permission was required. Some six more weeks passed until, by letter dated May 16, 1995, the financial advisor responded that ”[w]e shall move forward and allocate monies within the annuity family of funds as market conditions dictate.”
Scafidi brought this three count suit in October 1995. Count I asserts that Lumbermens “unreasonably withheld” its consent to appropriate investment of the collateral from July of 1993 until March of 1995, causing Scafidi “a loss of interest in the approximate amount of $50,000.” Count II seeks declaratory judgment that the limitations period for Newton’s claim has nm, and an order requiring Lumbermens to release the collateral.[5] Count III alleges that Lumbermens’ deduction of $11,431.19[6] for its expenses “constitutes a wrongful conversion of the property of the plaintiff,” and seeks return of those funds with interest. Lumbermens has counterclaimed for its attorneys fees and costs incurred in defending this action, contending that such defense falls within the provision in the indemnify agreement for expenses incurred in connection with the bond. Lumbermens has now moved for summary judgment on all counts of the complaint and on its counterclaim.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c); 365 Mass. 824(1974).The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A parly moving for summary judgment who does not bear the burden of proof at trial demonstrates the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its “pleadings and mere assertions of disputed facts . . .” Lalonde v. Eissner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to “allege specific facts which would establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., supra at 17.
Count I
Lumbermens argues that it is entitled to summary judgment on count I of the complaint because, it contends, it had no duty under the indemnity agreement, or under the common law, to invest the collateral in any particular way, or indeed to invest the collateral at all. Considered together with Lumbermens’ position on count II of the complaint, the implication of this argument is that Lumbermens is free to hold $310,000 in cash, for twenty years, without any return at all.
Lumbermens.is clearly correct that the indemnity agreement by its terms specifies no obligation to invest the collateral. Lumbermens acknowledges, however, the Uniform Commercial Code, as well as the common law, supply a requirement that a party in Lumbermens’ position use reasonable care to preserve the value of the collateral. See G.L.c. 106, §9-207 (“[a] secured party must use reasonable care in the custody and preservation of collateral in his possession”). See also Restatement 3d of Suretyship and Guaranty §42 (1995) (“failure to perform a duty to preserve the value of collateral” is impairment of the collateral so as to discharge the obligation of the guarantor), and comment e (“[a] secured party must use reasonable care in the custody and preservation of collateral in its possession”); Restatement of Security, §18 (1941) (“[wjhere instruments representing claims of the pledgor against third persons are pledged, the pledgee has the duty of using reasonable diligence to preserve and collect the claims or to enable the pledgor to undertake such preservation and collection").
Lumbermens points out that this duty is limited to the use of reasonable care to preserve the collateral, and does not extend to investment to maximize return. It cites Federal Deposit Insurance Corporation v. Air Atlantic, Inc., 389 Mass. 950, 956-7 (1983), in which the Court held that a secured party had no duty to sell stock it held as collateral in order to avoid the effect of a market decline. There is a significant difference, however, between collateral in the form of stock, in which the pledgor chose to invest, and collateral in cash. By its nature, and by the nature of the modem economy, cash declines in value if not invested at a rate of return at least sufficient to overcome the effects of inflation. Accordingly, this Court concludes that reasonable care of cash collateral requires its prudent investment, with reasonable promptness, at a reasonable rate of return consistent with safety of the principal.
*550 The facts presented in the present record do not establish conclusively either that Lumbermens did or did not meet this standard. Scafidi points to delays totaling some twenty-two months until the funds were invested in his chosen vehicle. It is unclear, however, to what extent this delay is attributable to obstruction by Lumbermens, as opposed to other factors, such as legitimate efforts by Lumbermens to ensure protection of its security interest, neglect by Scafidi’s investment advisor or by Scafidi himself, or mere misunderstandings among the various people involved.[7] Thus, the question of the reasonableness of Lumbermens’ conduct with respect to investment of the collateral presents a material fact in genuine dispute, and precludes summary judgment on count I.
Count II
Lumbermens argues that it is entitled to summary judgment on count II because the bond is a contract under seal, so that any action Newton might bring under the bond would be subject to a twenty year limitations period under G. L. 260, §1. Scafidi asserts that Newton’s claim would sound in negligence, and therefore is already time-barred.
Lumbermens is clearly correct on this point. The bond states that it is “signed and sealed in the presence oF witnesses, by its signatories. Under G.L.c. 4, §9A, this language makes the bond a sealed instrument. While any tort claim Newton might have had against Scafidi for his conduct that resulted in the loss would now be time-barred, any suit it would bring against Lumbermens under the bond would be not in tort, but on a contract under seal. Accordingly, no genuine issue of material fact exists with respect to count II, and Lumbermens is entitled to judgment as a matter of law, declaring that Newton’s cause of action under the bond is subject to a twenty year limitations period, so that Lumbermens’ right under the indemnity agreement to hold the collateral continues throughout that period.[8]
Count III
With respect to count III, regarding its deduction for expenses incurred in connection with the bond, Lumbermens relies on the broad language of the indemnity agreement, which entitles it to reimbursement for any and all expenses it incurs “by reason of executing said bond.” It argues that this provision encompasses all its expense relating to the bond or to Newton’s claim under it, including not only expenses for investigation of the claim itself, but also expenses relating to the collateral.
Scafidi, in opposition, presents no evidence to indicate that Lumbermens did not actually incur the claimed expenses in connection with activities related to the bond, or that the expenses were not reasonable for the services involved. Rather, he argues that the indemnity agreement does not cover expenses related to the collateral, since these are not expenses of prosecuting or defending any action under the bond. This argument simply ignores the broad language of the agreement, which is not limited to expenses of prosecuting or defending claims. Scafidi also argues that rather than deducting its expenses from the collateral, Lumbermens should have sent him an invoice for payment. Here, too, he ignores the language of the agreement, which gives Lumbermens a broad right of indemnification, without imposing any such duty.
This is not to say that a person in Scafidi’s position has no means of challenging deductions for expenses. First, Scafidi could challenge the veracity of the amounts claimed. In the context of a motion for summary judgment, however, such a challenge would require the presentation of evidence demonstrating a genuine dispute as to whether those amounts actually were spent. Scafidi has offered no such evidence. Second, Scafidi could challenge the necessity of the expenses for the purposes set forth in the agreement; a requirement that expenses be reasonably necessary would seem implicit in the nature of the agreement, even though no language expresses such a requirement explicitly. Here too, however, Scafidi offers no evidence giving rise to a genuine factual dispute as to the necessity of the expenses. Accordingly, Lumbermens is entitled to summary judgment on count III.
Lumbermens’ Counterclaim
The parties’ arguments as to Lumbermen’s counterclaim for its costs and attorneys fees incurred in defending this action mirror their arguments on count III of Scafidi’s complaint. Lumbermens relies on the same language in the indemnity agreement, and characterizes its defense of this case as merely another cost it has sustained “by reason of executing said bond,” for which it is entitled to indemnification from Scafidi under the agreement. Scafidi, again reading the agreement more narrowly than its language warrants, argues that each side must bear its own costs of litigation.
This Court concludes that the outcome of Lumbermens’s counterclaim depends on the outcome of count I, which cannot be resolved on summary judgment. If Scafidi succeeds in persuading a factfinder that Lumbermens acted unreasonably with respect to the collateral, then Lumbermen’s expenses in defending this case will be the result of its own unreasonable conduct, not a necessary consequence of its execution of the bond. In that event, those costs will be beyond the scope of the indemnity agreement, and Lumbermens will not be entitled to recover them. If the factfinder determines that Lumbermens acted reasonably with respect to the collateral, then its costs of defending this action will be necessary expenses arising from its execution of the bond, and it will be entitled to recover those costs under the agreement. Accordingly, Lumbermens’ motion for summary judgment on its counterclaim must be denied.
*551 ORDER
For the reasons stated, the defendant’s motion for summary judgment is DENIED as to count I of the plaintiffs complaint and as to the defendant’s counterclaim, and is ALLOWED as to counts II and III of the plaintiffs complaint.

It appears to be both Scafidi’s and Lumbermens’ position that Scafidi’s conduct leading to the loss was at worst negligence, and that the bond would cover only deliberate malfeasance. The present record does not reflect Newton’s position on either the facts of the loss or the scope of the bond.

At argument, both sides acknowledged a reluctance to reignite Newton’s interest in the matter.

The materials submitted on the summary judgment motion leave some uncertainty as to whether the escrow accounts used between June and September were interest bearing or not, although it would seem doubtful that such a fact could be genuinely disputed. It appears clear that from September 1993 on, the funds were placed in interest bearing bank savings accounts, with the interest paid to Scafldi.

Although Scafidi’s memorandum disputes this fact, it is established by Scafidi’s failure to deny Lumbermens’ request for an admission to this effect.

he complaint alleges that the applicable limitations period was three years, but alternatively seeks an order that the funds be released on the expiration of six years from the December 1990 loss. Both dates, of course, have now passed.

The materials submitted on the summary judgment motion do not explain the difference between this figure and the $13,000 Lumbermens’ records show it withheld.

Nothing in the present record supports Scafidi’s suggestions that the delay is attributable to some purposeful effort by Lumbermens to injure Scafidi’s interests.

This is not to say that Lumbermens must, or should, hold the collateral for that long. At some point, presumably well under tweniy years, it would seem safe to conclude that Newton does not intend to press its claim, or that the doctrine of laches would bar it from doing so. Lumbermens indicated at argument that, prior to Scafidi’s bringing this suit, it had informed him of its willingness to release the collateral upon the expiration of six years — that is, after the conclusion of 1996.